**In re Eddie James LEE & Brenda Funches Lee, Andrew L. Payton & Carolyn L. Payton, Danny Lee Snow, Johnnie Simpson, Willie James Townsend & Sandra Townsend, Loria J. Gibson, Elsie Henrietta Cowan.**

**Bankruptcy Nos. 9104367EEJ, 9103588EEJ, 9003868EEJ, 9103308EEJ, 9100494EEJ, 9103687EEJ and 9200891EEJ.**

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

Oct. 30, 1992.

Jeff D. Rawlings, Rimmer, Rawlings, Harrison, MacInnis & Hedglin, P.A., Jackson, MS, for Green Tree Acceptance of Mississippi, Inc.

Harold J. Barkley, Jr., Chapter 13 Trustee, Terre Vardaman, Jackson, MS, for trustee.

Bernard Chill, Jr., Jackson, MS, for Eddie Lee and Brenda Lee.

Cynthia L. Perry, Jackson, MS, for Andrew Payton and Carolyn Payton.

J. Thomas Ash, Jackson, MS, for Danny Snow and Johnnie Simpson.

Lamar Arrington, Hazlehurst, MS, for Willie and Sandra Townsend.

John A. Allen, Jackson, MS, for Loria Gibson.

John M. Stevens, Jackson, MS, for Elsie Cowan.

## MEMORANDUM OPINION

EDWARD ELLINGTON, Chief Judge.

These cases came on for hearing upon the motions for abandonment of collateral and relief from the automatic stay filed by Green Tree Acceptance of Mississippi, Inc. in each of the above referenced cases. After notice and a hearing, the Court has considered the evidence presented at trial along with arguments of counsel, and being otherwise fully advised in the premises does hold that the motions of Green Tree are not well taken and should be denied. In so holding, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

Green Tree filed motions for relief from the automatic stay in several chapter 13 cases pending in this district. Seven of Green Tree's motions were heard by this Court, which motions are the subject of this opinion.

In its motions, Green Tree alleges in general terms that each of the Debtors have defaulted on their obligations under their chapter 13 plans and that the Debtors have failed to provide adequate protection to Green Tree. Additionally, Green Tree argued at trial that since the plan payments it receives from the Chapter 13 Trustee's office often lag several weeks behind the payment due date under the terms of the original contracts executed by the Debtors, Green Tree suffers a modification of its rights that is impermissible under Bankruptcy Code [1] § 1322(b)(2).

The Chapter 13 Trustee, Harold J. Barkley, Jr. opposes the motions, and has filed an objection to Green Tree's motion in each case. The Trustee asserts that Green Tree has no basis for relief from the automatic stay. After confirmation of a chapter 13 plan, the only grounds for relief from the automatic stay, absent fraud, waste or failure to maintain insurance, is material default by a debtor under the terms of a confirmed plan. Additionally, the Trustee submits that Green Tree's real argument is not with the Debtors, but rather is with the method under which the Chapter 13 Trustee's office operates, which has absolutely no bearing on whether the Debtors are in compliance with their chapter 13 plans. Finally, the Trustee asserts that all issues pertaining to adequate protection and impermissible modification of rights under Bankruptcy Code § 1322(b)(2) must be raised by objection to confirmation of a debtor's plan, and upon confirmation those issues become res judicata.

All of the cases have factual similarities. However, the specific facts of each case, although somewhat repetitive, are important and need to be set forth in some detail.

## EDDIE JAMES LEE AND BRENDA FUNCHES LEE

In connection with the purchase of a mobile home, on January 5, 1989 Brenda Funches Lee executed a combination retail installment contract and security agreement along with a U.C.C. financing statement in favor of Munn Mobile Homes, Inc. Munn subsequently assigned its rights under the contract and security agreement to Green Tree.

On November 18, 1991 Eddie James Lee and Brenda Funches Lee filed a joint petition for relief under chapter 13 of the Bankruptcy Code, and an order confirming their plan was entered on February 10, 1992. Under the terms of the confirmed plan the Lees are to pay $507 per month into the plan. The plan payments are to be deducted from both Mr. and Mrs. Lee's paychecks by their employers, Bonner Campbell Church and Langston Bags, and remitted to the Chapter

---

[1]. Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

Trustee pursuant to wage orders which have been entered. A wage order is similar to a garnishment, and is issued in most chapter 13 cases by the bankruptcy court to a debtor's employer, ordering that a certain amount of money necessary to fund the debtor's plan be deducted from the debtor's paycheck and sent to the chapter 13 trustee.

The plan provides for payment to Green Tree in the amount of $131.44 per month, for every month from the date the Lees filed their petition for relief. This payment represents Mrs. Lee's regular monthly payment under the contract. The Lees will also pay over the life of the plan all amounts which had accrued in favor of Green Tree and which they had not paid at the time they filed their petition. This is commonly referred to as "prepetition arrearage."

On July 9, 1992 Green Tree filed its Motion To Abandon Collateral And Lift Stay alleging that the Mrs. Lee has defaulted on her obligation to make payments into the plan, and that she has failed to provide adequate protection to Green Tree.

At trial Green Tree presented evidence showing that since the date the Lees filed their petition for relief, Green Tree has not received its monthly payment on the date it is due under the terms of the original retail installment contract executed by Mrs. Lee. Green Tree further presented evidence that often the monthly payments received from the Chapter 13 Trustee are less than or greater than the exact amount which the Debtors are to pay Green Tree through the plan.

The Chapter 13 Trustee presented, through the testimony of his office manager, evidence showing that up to the date of the trial, $5,807.56 has been paid into the plan. Testimony was also presented that although under the plan the Lees were $441.50 in arrears in their payments to the Trustee on the date of the trial, the Lees' employers do not typically send their withheld earnings to the Trustee until the middle of the month following deduction of the wages. Therefore, the arrearage existing on the date of the trial would be cured upon receipt of the money withheld from the Lees' earnings in accordance with the plan.

## ANDREW L. PAYTON AND CAROLYN L. PAYTON

In connection with the purchase of vinyl siding for their home, on November 21, 1990 Andrew and Carolyn Payton executed a combination installment contract and security agreement in favor of Leadco Construction. The Paytons also granted a second deed of trust on their home in favor of Leadco. Leadco subsequently assigned its rights under both the contract and deed of trust to Green Tree.

On September 24, 1991 the Paytons filed a joint petition for relief under chapter 13 of the Bankruptcy Code, and an order confirming their plan was entered on December 18, 1991. Under the terms of the confirmed plan the Paytons are to pay $164.45 per week into the plan. The plan payments are to be deducted from Mr. Payton's paycheck by his employer, Insulation Foam and Roofing, and remitted to the Chapter 13 Trustee pursuant to a wage order which has been entered.

Deposit Guaranty holds a first deed of trust on the Paytons' home and is to be paid its regular monthly payment of $342.00 through the plan. The plan also provides for payment to Green Tree, which holds a second deed of trust, for its regular monthly payment under the installment contract in the amount of $114.01 per month, for every month from the date the Paytons filed their petition for relief. The Paytons will also pay over the life of the plan all amounts which had accrued in favor of Green Tree at the time of filing their petition.

On July 9, 1992 Green Tree filed its Motion To Abandon Collateral And Lift Stay, alleging that the Paytons have defaulted on their obligation to make payments into the plan, and that they have failed to provide adequate protection to Green Tree.

At trial Green Tree presented evidence showing that since the date the Paytons filed their petition for relief, Green Tree has not received its monthly payment on the date it is due under the terms of the original installment contract executed by the Paytons. Green Tree further presented evidence that often the monthly payments received from

the Chapter 13 Trustee are less than or greater than the exact monthly amount which the Paytons are to pay Green Tree through the plan.

The Chapter 13 Trustee presented, through the testimony of his office manager, evidence showing that up to the date of the trial, $6,881.07 has been paid into the plan. Testimony was also presented that although under the plan the Paytons were $537.37 in arrears in their payments to the Trustee on the date of the trial, Mr. Payton's employer does not typically send his withheld earnings to the Trustee until the middle of the month following deduction of the wages. Therefore, the arrearage existing on the date of the trial would be cured upon receipt of the money withheld from Mr. Payton's earnings in accordance with the plan.

### DANNY LEE SNOW

In connection with the purchase of a mobile home, on March 16, 1989 Danny Lee Snow executed a combination retail installment contract and security agreement along with a U.C.C. financing statement in favor of an entity that according to the documents is named Green Tree Acceptance of Missi. Green Tree of Missi subsequently assigned it rights under the contract and security agreement to Green Tree Acceptance of Mississippi, Inc.

On November 13, 1990 Snow filed a petition for relief under chapter 13 of the Bankruptcy Code. Green Tree objected to confirmation of the plan, and the objection was resolved by entry of an agreed order to amend the plan. On April 17, 1991 an order was entered confirming Snow's plan. Under the terms of the confirmed plan Snow is to pay $79.26 per week into the plan. The plan payments are to be deducted from Mr. Snow's paycheck by his employer, Sara Lee Bakery, and remitted to the Chapter 13 Trustee pursuant to a wage order which has been entered.

The plan provides for payment to Green Tree in the amount of $264 per month, for every month from the date Snow filed his petition for relief. This payment represents Snow's regular monthly payment under the contract for $218.95 plus an installment payment for insurance. Snow will also pay over the life of the plan all amounts which had accrued in favor of Green Tree at the time of filing his petition.

On July 9, 1992 Green Tree filed its Motion To Abandon Collateral And Lift Stay, alleging that Snow has defaulted on his obligation to make payments into the plan and maintain insurance on the mobile home, and that he has failed to provide adequate protection to Green Tree.

At trial, Green Tree presented evidence showing that since the date Snow filed his petition for relief, Green Tree has not received its monthly payment on the date it is due under the terms of the original retail installment contract executed by Snow. Green Tree further presented evidence that often the monthly payments received from the Chapter 13 Trustee are less than or greater than the exact amount which Snow is to pay Green Tree through the plan.

The Chapter 13 Trustee presented, through the testimony of his office manager, evidence showing that up to the date of the trial, $6,636.00 has been paid into the plan. Further testimony was presented that although under the plan Snow was $158.00 in arrears in his payments to the Trustee on the date of the trial, Mr. Snow's employer does not typically send his withheld earnings to the Trustee until the month following deduction of the wages. Therefore, the arrearage existing on the date of the trial would be cured upon receipt of the money withheld from Mr. Snow's earnings in accordance with the plan.

### JOHNNIE SIMPSON

In connection with the purchase of vinyl siding for his home, on October 9, 1990 Johnnie Simpson executed a combination retail installment contract and security agreement in favor of Capital Vinyl Siding, Inc. Simpson also granted a second deed of trust on his home in favor of Capital Vinyl Siding. Capital Vinyl Siding subsequently assigned its rights under the installment contract and security agreement along with the deed of trust to Green Tree.

On September 4, 1991, Mr. Simpson filed his petition for relief under chapter 13 of the Bankruptcy Code, and an order confirming his plan was entered on December 18, 1991. Under the terms of the confirmed plan Simpson is to pay $205.56 every two weeks into the plan. The plan payments are to be deducted from Mr. Simpson's paycheck by his employer, Mississippi Chemical, and remitted to the Chapter 13 Trustee pursuant to a wage order which has been entered.

Jim Walter Homes holds a first deed of trust on Mr. Simpson's home and is to be paid its regular monthly payment of $202.00 through the plan. The plan also provides for payment to Green Tree in the amount of $108.00 per month, for every month from the date Mr. Simpson filed his petition for relief. This payment represents his regular monthly payment under the installment contract. He will also pay over the life of the plan all amounts which had accrued in favor of Green Tree at the time of filing his petition.

On July 10, 1992 Green Tree filed its Motion To Abandon Collateral And Lift Stay alleging that Mr. Simpson has defaulted on his obligation to make payments into the plan, and that he has failed to provide adequate protection to Green Tree.

At trial Green Tree presented evidence showing that since the date Mr. Simpson filed his petition for relief, Green Tree has not received its monthly payment on the date it is due under the terms of the original installment contract executed by the Debtor. Green Tree further presented evidence that often the monthly payments received from the Chapter 13 Trustee are less than or greater than the exact amount which the Debtor is to pay Green Tree through the plan.

The Chapter 13 Trustee presented, through the testimony of his office manager, evidence showing that up to the date of the trial, $4,127.50 has been paid into the plan. Testimony was also presented that through the end of the month preceding the trial, Mr. Simpson was $7.29 in arrears in his payments to the Trustee, and that although the Trustee had not yet received the plan payment for the immediate month, assuming Mr. Simpson's employer withheld the money in accordance with the wage order, Green Tree will receive a plan payment as it has every month since confirmation of the plan.

## WILLIE TOWNSEND AND SANDRA TOWNSEND

In connection with the purchase of a mobile home, Willie and Sandra Townsend executed a combination retail installment contract and security agreement along with a U.C.C. financing statement in favor of Royer Mobile Homes of MS, Inc. Royer Mobile Homes subsequently assigned its rights under the combination installment contract and security agreement to Green Tree.

On February 4, 1991 the Townsends filed a joint petition for relief under chapter 13 of the Bankruptcy Code, and an order was entered confirming their plan on May 10, 1991. Under the terms of the confirmed plan, The Townsends are to pay $255.06 per month into the plan. The plan payments are to be deducted from Mr. Townsends's paycheck by his employer, Columbus Lumber Co., and remitted to the Chapter 13 Trustee pursuant to a wage order which has been entered.

The plan provides for payment to Green Tree in the amount of $180.06, for every month from the date the Townsends filed their petition for relief. This payment represents the Townsend's regular monthly payment under the installment contract of $140.14 plus an installment payment for insurance. The Townsends will also pay over the life of the plan all amounts which had accrued in favor of Green Tree at the time of filing their petition.

On July 9, 1992 Green Tree filed its Motion To Abandon Collateral And Lift Stay alleging that the Townsends have defaulted on their obligation to make payments into the plan, and that they have failed to provide adequate protection to Green Tree.

At trial Green Tree presented evidence showing that since the date the Townsends filed their petition for relief, Green Tree has not received its monthly payment on the date it is due under the terms of the original retail installment contract executed by the Townsends. Green Tree further presented evidence that often the monthly payments re-

ceived from the Chapter 13 Trustee are less than or greater than the exact amount which the Townsends are to pay Green Tree through the plan.

The Chapter 13 Trustee presented, through the testimony of his office manager, evidence showing that up to the date of the trial, $4,149.82 has been paid into the plan. Further testimony was presented that under the plan the Townsends were $271.61 in arrears on their regular monthly payment to Green Tree through the end of the last month prior to trial. However, the Trustee had not yet received from Mr. Townsend's employer the present month's plan payments, and assuming that the money was withheld in accordance with the wage order, then the Townsends would be $91.55, or approximately one half of one payment, in arrears on their monthly payments to Green Tree.

## LORIA J. GIBSON

In connection with the purchase of a mobile home, on July 25, 1989 Loria Gibson executed a combination retail installment contract and security agreement along with a U.C.C. financing statement in favor of CSF & T, Inc. d/b/a AAA Homes. CSF & T subsequently assigned its rights under the installment contract and security agreement to Green Tree.

On October 2, 1991 Ms. Gibson filed her petition for relief under chapter 13 of the Bankruptcy Code, and on February 28, 1992 an order was entered confirming her plan. Under the terms of the confirmed plan, Ms. Gibson is to pay $455.00 per month into the plan. The plan payments are to be deducted from Ms. Gibson's paycheck by her employer, Trilogy Communications, and remitted to the Chapter 13 Trustee pursuant to a wage order which has been entered.

The plan provides for payment to Green Tree in the amount of $282.00 per month, for every month from the date Ms. Gibson filed her petition for relief. This payment represents her regular monthly payment under the installment contract of $272.80. The difference between the amount of the plan payment to Green Tree and the amount due under the installment contract is apparently the result of an error. Gibson will also pay over the life of the plan all amounts which had accrued in favor of Green Tree at the time of filing her petition.

On June 18, 1992 Green Tree filed its Motion To Abandon Collateral, Lift Stay Or For Adequate Protection alleging that the mobile home is not insured, and that Gibson has not provided Green Tree with adequate protection.

At trial Green Tree presented evidence showing that since the date that Ms. Gibson filed her petition for relief, Green Tree has not received its monthly payment on the date it is due under the terms of the original retail installment contract executed by Gibson. Green Tree further presented evidence that often the monthly payments received from the Chapter 13 Trustee are less than or greater than the exact amount which Gibson is to pay Green Tree through the plan.

In response to Green Tree's allegation that Ms. Gibson does not have insurance on the mobile home, her attorney introduced a document from Liberty Mutual Insurance Company which states that there is insurance coverage in effect. However, the document is unclear as to the exact status of the insurance, and the Court will allow Ms. Gibson 15 days from entry of the judgment accompanying this opinion to provide Green Tree with sufficient proof that the mobile home is insured.

The Chapter 13 Trustee presented, through the testimony of his office manager, evidence showing that up to the date of the trial $4,365.50 has been paid into the plan. Testimony was also presented that Gibson was $129.50 in arrears in her payments to the Trustee under her chapter 13 plan. However, of the total arrearage amount, only $49.62 constitutes money due Green Tree under the plan, and if an adjustment were made for the additional amount that mistakenly has been paid to Green Tree, then the plan payments to Green Tree are current.

## ELSIE HENRIETTA COWAN

In connection with the purchase of a mobile home, on February 27, 1989 Elsie Cowan executed a combination retail installment

contract and security agreement along with a U.C.C. financing statement in favor of Melody Mobile Homes, Inc. Melody Mobile Homes subsequently assigned its rights under the installment contract and security agreement to Green Tree.

On March 3, 1992 Cowan filed her petition for relief under chapter 13 of the Bankruptcy Code, and an order confirming her plan was entered on May 13, 1992. Under the terms of the confirmed plan Ms. Cowan is to pay $376,00 per month into the plan. Ms. Cowan is not employed so she sends her monthly plan payments to the Chapter 13 Trustee by money order.

The plan provides for payment to Green Tree in the amount of $267.77 per month, for every month from the date Ms. Cowan filed her petition for relief. This payment represents her regular monthly payment under the installment contract of $219.27 plus an installment payment for insurance on the mobile home. Cowan will also pay over the life of the plan all amounts which had accrued in favor of Green Tree at the time of filing her petition.

On July 2, 1992 Green Tree filed it Motion To Abandon Collateral And Lift Stay alleging that Cowan has defaulted on her obligation to make payments into the plan, and she has failed to provide adequate protection to Green Tree.

At trial Green Tree presented evidence showing that since Ms. Cowan filed her petition for relief, Green Tree has not received its monthly payment on the date it is due under the terms of the original retail installment contract executed by Ms. Cowan. Green Tree further presented evidence that often the monthly payments received from the Chapter 13 Trustee are less than or greater than the exact amount which the Debtors are to pay Green Tree through the plan.

The Chapter 13 Trustee presented, through the testimony of his office manager, evidence showing that up to the date of the trial, $2,226.00 has been paid into the plan and that Ms. Cowan is completely current in her payments into the plan. Although the plan payments are in arrears to Green Tree in the total amount of $66.23, the arrearage is a result of the method of disbursement used by the Trustee's office, and is not the result of Ms. Cowan's failure to meet her obligations under the plan.

## OPERATION OF CHAPTER 13 TRUSTEE'S OFFICE

The Chapter 13 Trustee's office manager also testified at trial regarding the method under which his office operates and disburses funds. The office manager stated that under certain circumstances payments are actually received by the creditors several weeks past the month to which the payment is attributable. However, when a creditor does experience a delay in receiving plan payments, it is normally caused by the frequency and timing with which an employer remits withheld earnings to the Trustee, in conjunction with the method by which the Trustee makes disbursements. Delay in creditors' receipt of plan payments from the Trustee does not necessarily reflect that the debtor is failing to make required payments into the plan.

Pursuant to Bankruptcy Code § 1326(a)(2)[2], a chapter 13 trustee holds all funds received from a debtor until confirmation of that debtor's plan, at which time he begins making disbursements to creditors under the plan. The Trustee's office manager testified that Mr. Barkley's office disburses between 10,000 to 15,000 checks to creditors each month with the aid of a computer service. Each month as funds are received by his office, the Trustee's staff loads the information into his computer system for monthly processing by the computer service used by chapter 13 trustees. The computer

2. **11 U.S.C. § 1326**

§ 1326. Payments.

(a)(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

(2) A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

service has assigned to Mr. Barkley's office the fourth Friday of each month as a cut-off date for processing information. At that time, all funds in the possession of the Trustee are processed for disbursement to creditors in accordance with confirmed plans. This disbursement is accomplished by the middle of the following month, or two to three weeks after the cut-off date. Any funds received by the Chapter 13 Trustee's office past the cut-off date are processed for disbursement during the next processing cycle.

Therefore, when a debtor's employer waits until the end of the month to send withheld earnings to the Trustee, the processing cut-off date for that month has already expired, and the information processing for the following month has begun. These funds will then not be disbursed to creditors until the expiration of another processing cycle. In other words, in a situation as just described, the creditor may not receive a payment attributable to a certain month until six weeks after that month has ended, although the debtor has complied fully with the terms of the confirmed plan.

Additionally, the amount a creditor receives from the Trustee may fluctuate due to a standing order entered in the Southern District of Mississippi [3], providing that where the attorney for the debtor is to receive his fee through the plan, the Trustee must disburse the funds in his possession according to a formula that generally results in the attorney for the debtor being paid in full during the first year of a confirmed plan. Depending on how quickly the plan is confirmed, the Trustee may not have enough money in his possession during the first year

after confirmation of the plan to make a full plan payment to the creditors.

### CONCLUSIONS OF LAW

As set forth in the foregoing findings of fact, each of these cases is a chapter 13 bankruptcy in which orders confirming each Debtor's chapter 13 plan have been entered. Green Tree objected to confirmation of the plan in only one of the cases before this Court, *In re Danny Lee Snow,* and that objection was resolved by entry of an agreed order modifying the plan. Green Tree now seeks relief from the automatic stay post-confirmation based on an alleged default under the terms of the plan, lack of adequate protection, and violation of Bankruptcy Code § 1322(b)(2) [4].

### EFFECT OF CONFIRMATION

In support of its request for relief from the automatic stay in each of these cases, Green Tree presented evidence to the Court regarding its right to payment under the terms of the original contracts entered into with each Debtor. However, once a chapter 13 plan has been confirmed, the original terms of the debt are no longer in effect, and all creditors are bound by the terms of the debtor's plan, except for creditors holding a claim that is secured by real property that is the debtor's principal residence.

Bankruptcy Code § 1327(a) contains clear language regarding the effect of confirmation on a creditor's rights arising out of a prepetition debt, providing as follows:

---

**3.** On June 22, 1990 a standing order, signed by both Judge Edward Gaines and Judge Edward Ellington, regarding the payment of attorney fees in chapter 13 cases was entered in the United States Bankruptcy Court For The Southern District Of Mississippi. Attorney fees are an administrative expense of the estate under Bankruptcy Code § 503, entitled to priority under § 507, and required to be paid in full under § 1322(a). The order provides that following confirmation of a plan, any fee which the attorney for the debtor is to be paid pursuant to the confirmed plan shall be paid as follows: "The Trustee shall make an initial payment of $100.00 plus additional pay-

ments equal to 15% of funds received by the trustee until the fee is paid."

**4. 11 U.S.C. § 1322**
§ 1322. Contents of plan.
(b) Subject to subsections (a) and (c) of this section, the plan may—
* * * * * *
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principle residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1327

§ 1327. Effect of confirmation.

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

■ Additionally, case law is clear as to the effect that confirmation of a debtor's chapter 13 plan has on a creditors pre-confirmation rights. "All creditors are bound by the terms of a confirmed plan." *In re Randall,* 98 B.R. 916 (Bankr.N.D.Ill.1989). "The order of confirmation in a Chapter 13 case is to be given *res judicata* effect as to those issues that were decided or could have been decided, at the time of confirmation." *In re Guilbeau,* 74 B.R. 13 (Bankr.W.D.La. 1987).

The Fifth Circuit Court of Appeals recently held in *Sun Finance Co. v. Howard (Matter of Howard),* 972 F.2d 639 (5th Cir.1992) that in order for a confirmed chapter 13 plan which purports to alter the amount of a secured claim to be binding on the secured creditor, the debtor must object to that creditor's proof of claim, putting the creditor on notice that participation in the bankruptcy is necessary. However, none of the instant cases involve an alteration of either the lien or the total amount of the secured claim held by Green Tree. In specifically rejecting the creditor's argument that any flaw in the provisions of a chapter 13 plan may be objected to after confirmation, the *Howard* court limited the scope of its holding, stating as follows:

A Chapter 13 plan may by its very nature change the terms of payment and otherwise modify the terms of the debt underlying the lien. Creditors are put on notice of the possibility of these types of modifications by notice of the filing of a Chapter 13 proceeding and must object to the confirmation of a plan in order to prevent their effect. These plan provisions will be final as to all creditors in those respects because they do not conflict with other provisions of the bankruptcy code.

*Id.,* 972 F.2d at 642 (citing *Matter of Pence,* 905 F.2d 1107 (7th Cir.1990)).

Finally, in considering whether a creditor should be granted post-confirmation relief from the automatic stay under Bankruptcy Code § 362, the majority of courts have ruled consistent with the court's opinion in *Ford Motor Credit Company v. Lewis (In re Lewis),* 8 B.R. 132 (Bankr.D.Idaho 1981):

"Thus by operation of [§ 1327] it is clear that a creditor cannot thereafter assert any other interest than that provided for him in the confirmed plan and that all of the issues of adequate protection, lack of equity, the fact that the property is not necessary for effective reorganization of debtor's affairs, etc., could and should have been raised in objections to confirmation."

*Id.* at 137; *see also In re Patterson,* 107 B.R. 576 (Bankr.S.D.Ohio 1989); *In re Davis,* 64 B.R. 358 (Bankr.S.D.N.Y.1986); *In re Toth,* 61 B.R. 160 (Bankr.N.D.Ill.1986).

## DEFAULT UNDER THE TERMS OF A CONFIRMED PLAN

As a basis for relief from the automatic stay, Green Tree alleges that each of the Debtors are in default under the terms of their confirmed plans. The Chapter 13 Trustee does not dispute that Green Tree would be entitled to relief for the automatic stay where a debtor materially defaults under the terms of a confirmed plan, but simply argues that Green Tree has not proven a material default by any of the Debtors.

In support of its position, Green Tree presented the testimony of its assistant collection manager regarding the status of the loans at issue. She testified as to amounts received by Green Tree from the Chapter 13 Trustee, and that Green Tree has not received payment from the Trustee on behalf of the Debtors in accordance with either the contract or the chapter 13 plan. Green Tree did not present any evidence showing that the Debtors failed to pay the Trustee as required by the plan, but instead only showed what Green Tree has received from the Trustee, arguing that the method for disbursing funds used by the Trustee is sufficient cause for the Court to lift the automatic stay.

■ Since a creditor's rights are redefined by the terms of the confirmed plan, where a debtor materially defaults under the terms of

his confirmed plan the creditor may be entitled to relief from the automatic stay under Bankruptcy Code § 362. *Ellis v. Parr (In re Ellis),* 60 B.R. 432, 435 (9th Cir. BAP 1985).

In denying a creditor's motion for relief from the automatic stay, the court held in *In re Toth,* 61 B.R. 160, 166 (Bankr.N.D.Ill. 1986) that "[a] creditor's motion to modify the stay after confirmation can be an appropriate vehicle only when there is a post-confirmation default by the debtor, such as failure to make payments, maintain insurance, waste, or other changed circumstances." *See also In re Randall,* 98 B.R. 916, 918 (Bankr.N.D.Ill.1989); *Society Bank v. Botteri (In re Botteri),* 108 B.R. 164 (Bankr.S.D.Ohio 1989); *In re Smith,* 104 B.R. 695, 700 (Bankr.E.D.Pa.1989).

■ While evidence was presented at trial that certain of the Debtors are in arrears under the terms of their confirmed plans, the arrearage amounts are insignificant in relation to the amount of money that the Debtors have paid and are paying into their plans. A post-confirmation default must be material in order to constitute grounds for relief from the automatic stay.

■ Furthermore, Green Tree's argument that the Court should hold the Debtors responsible for the manner in which the Trustee disburses funds is wholly unfounded. The Bankruptcy Code requires only that the debtor fulfill its obligations under the terms of the plan in order to claim the protection of the automatic stay. As explained in *In re Rutenbeck,* 78 B.R. 912 (Bankr.E.D.Wis. 1987):

> Delay in distribution of funds by the chapter 13 trustee following confirmation is not uncommon and can be caused for any number of reasons, none of which is the fault of the debtor. A secured creditor

will not be given relief from the stay, nor any creditor, secured or unsecured, relief under § 1307(c), where the debtor has been making payments to the trustee in accordance with a confirmed plan, and the creditor's sole complaint is that the trustee has been slow in paying out to the creditor. *Id.* at 913.

■ Under Rule 1007(c) [5] of the Federal Rules of Bankruptcy Procedure, a debtor does not have to file his schedules and plan until 15 days after filing his petition for relief. The debtor then has an additional 30 days to make his first payment into the plan pursuant to Bankruptcy Code § 1326(a)(1) [6]. Therefore, depending on when the schedules and plan are filed, a debtor may have as many as 45 days, and will have no less than 30 days, after filing his petition for relief to make his first payment to the trustee, and still be in compliance with the Bankruptcy Code. If the plan is then confirmed in a short period of time, and the attorney for the debtor receives his fee through the plan, in accordance with the standing order, then it is likely that the trustee will not have sufficient funds immediately after confirmation to pay a secured creditor all payments due from the date of filing. However, once the trustee begins making payments to creditors after confirmation, the creditors will thereafter receive a monthly plan payment until the entire amount due under the plan is paid, assuming the debtor's employer regularly remits withheld earnings to the trustee.

In other words, a chapter 13 plan contemplates that a debtor will pay a certain number of plan payments of equal amount to the trustee, to be distributed to creditors over the life of the plan. Where an administrative expense, such as the debtor's attorney fee in this instance, is paid in full during the early part of the plan, other creditors necessarily

---

**5.** Rule 1007 of the Federal Rules of Bankruptcy Procedure provides in relevant part as follows:
**Rule 1007. Lists, Schedules and Statements; Time Limits.**

. . . . .

(c) **Time Limits.** The schedules and statements, other than the statement of intention, shall be filed with the petition in a voluntary case, or if the petition is accompanied by a list of all the debtor's creditors and their addresses,

within 15 days thereafter, except as otherwise provided in subdivisions (d), (e), and (h) of this rule.

**6.** **11 U.S.C. § 1326**
§ 1326. **Payments.**
(a)(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

receive less than their designated portion of the total plan payment during these months of preemption. However, once the preempting administrative expense is paid in full, the creditors then receive a monthly amount greater than the amount designated by the plan for a period of time. Assuming the debtor completes the plan, the creditors will receive the appropriate amount over the life of the plan.

The Court is of the opinion that Green Tree has failed to show that any of the Debtors are in material default under their respective plans, and therefore, Green Tree is not entitled to relief from the automatic stay in the present cases.

## ADEQUATE PROTECTION AND MODIFICATION OF RIGHTS UNDER § 1322(b)(2)

■ Green Tree also alleges in its motions that the Debtors have failed to provide adequate protection to Green Tree. At the trial of these matters additional evidence was presented regarding the treatment of the claims as home mortgages under the plan. Counsel for Green Tree argued that the method of disbursement of funds by the Chapter 13 Trustee's office results in an impermissible modification of Green Tree's rights under Bankruptcy Code § 1322(b)(2).

The Court would point out, however, that while Green Tree seeks to employ § 1322(b)(2) which prohibits the modification of a "claim secured only by a security interest in real property that is the debtor's principal residence," as grounds for relief from the automatic stay, Green Tree only holds a security interest in real property in two of the seven cases. The remaining five cases involve a security agreement and U.C.C. financing statement on a mobile home. Also, none of these cases involve any issues of valuation, bifurcation of a secured claim, or the determination of the extent or validity of Green Tree's lien. Each Debtor has proposed to pay through the plan the full monthly payment due Green Tree under their respective contracts, and to cure all prepetition arrearage over the life of the plan.

Furthermore, Green Tree seems to assert in each of these cases that the failure of the Chapter 13 Trustee's office to disburse plan funds to Green Tree in accordance with the terms of the original installment contract, i.e. observance of due dates, violates Green Tree's alleged rights under § 1322(b)(2).

Although Green Tree has chosen an improper procedural vehicle to assert its arguments, the Court would make clear that it finds no merit in the arguments, regardless of the means employed to assert them. The Fifth Circuit Court of Appeals recently dealt with the issue of modification of rights under § 1322(b)(2) in *Matter of Nobleman,* 968 F.2d 483 (5th Cir.1992), *petition for cert. filed* (U.S. Oct. 13, 1992) (No. 92–641), holding that bifurcation of an undersecured claim that is secured by real property that is a debtor's primary residence into both a secured claim and an unsecured claim is prohibited by § 1322(b)(2). Though the court addressed only the issue of bifurcation, in reaching its decision the court relied on its previous decision, *Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236 (5th Cir.1984) wherein the court held that "deacceleration" of a home mortgage, along with payment of the prepetition arrearage through the plan does not constitute an impermissible modification of the secured creditor's rights under § 1322(b)(2).

Although neither of these decisions addressed whether a creditor holding a home mortgage is entitled to disbursements from the chapter 13 trustee in accordance with the due date contained in the terms of the original contract, both cases involved home mortgages being paid through the chapter 13 plan, and no suggestion was made by the court that such a method of payment is improper under § 1322(b)(2). As previously stated, the Trustee's office disburses between 10,000 and 15,000 checks to creditors each month. It would be extremely burdensome for the Chapter 13 Trustee to review every contract involving a home mortgage, determine the due date, and pay each individual creditor in accordance with its particular contract. If Green Tree's argument were accepted by this Court, then the only way a debtor could comply with the Bankruptcy Code would be to pay any secured creditor protected from modification of its rights un-

der § 1322(b)(2) outside of the plan. Such a result is not mandated by § 1322(b)(2).

## CONCLUSION

In summary, although material default under the terms of a confirmed plan is a basis for relief from the automatic stay, Green Tree has failed to prove material default in any of the instant cases. The method used by the Chapter 13 Trustee in disbursing funds to creditors under the plan has no bearing on whether a debtor has complied with the terms of his confirmed plan. Furthermore, Green Tree is adequately protected by the confirmed plans, and has shown no cause for relief from the automatic stay based on its alleged modification of rights in violation of Bankruptcy Code § 1322(b)(2) resulting from the method under which the Chapter 13 Trustee's office operates. For these reasons, Green Tree's Motions for Abandonment Of Collateral And Relief From The Automatic Stay should be denied. Furthermore, the Debtor, Loria J. Gibson, will be given 15 days from entry of the judgment accompanying this opinion to provide Green Tree with sufficient proof of insurance coverage on her mobile home.

A separate judgment consistent with this opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

### *FINAL JUDGMENT*

Consistent with the opinion dated contemporaneously herewith, it is hereby ordered and adjudged that the motions filed by Green Tree Acceptance of Mississippi, Inc. for abandonment of collateral and relief from the automatic stay in the above cases are hereby denied.

It is further ordered that Loria J. Gibson provide to Green Tree sufficient proof of insurance coverage on her mobile home within 15 days from entry of this judgment.

This is a final judgment for the purposes of Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

**ORDERED AND ADJUDGED.**