In re Sylvester **HARRIS**
and Minnie Harris.

Sylvester Harris and Minnie
Harris, Plaintiffs,

v.

**Washington Mutual Home Loans,
Inc., Defendant.**

Bankruptcy No. 96–43714.
Adversary No. 02–1220.

United States Bankruptcy Court,
N.D. Mississippi.

July 3, 2003.

Harold J. Barkley, Jr., Jackson, MS, Steve Olen, Mobile, AL, Donald J. Stewart, Mobile, AL, for Debtors.

William H. Leech and Lance Bowling of McGlinchey Stafford, Jackson, MS, for Washington Mutual.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion to dismiss, filed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, by the defendant, Washington Mutual Home Loans, Inc., ("Washington Mutual"); a response thereto having been filed by the plaintiffs/Chapter 13 debtors, Sylvester Harris and Minnie Harris; and the court, having considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, as well as, the General Order of Reference issued by the United States District Court for the Northern District of Mississippi on July 27, 1984.

Certain aspects of this cause of action would constitute a core adversary proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O). Other aspects of the cause of action would be considered a "non-core" or "related" proceeding as contemplated by 28 U.S.C. § 157(c).

### II.

■ Since this is a motion to dismiss filed by the defendant pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the court must construe the complaint liberally in favor of the plaintiffs as the non-moving parties and assume the truth of all pleaded facts. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir.2002); *Frank v. Delta Airlines, Inc.,* 314 F.3d 195 (5th Cir.2002).

### III.

The primary thrust of the plaintiffs' complaint is the assertion that Washington Mutual wrongfully assessed monthly late fees against the payments that the plaintiffs made through the Chapter 13 trustee on the indebtedness owed to Washington Mutual pursuant to their confirmed Chapter 13 bankruptcy plan. The plaintiffs' plan provided that they would cure the pre-petition and pre-confirmation arrearages accrued on the indebtedness over the life of the plan while maintaining their regular monthly mortgage payments as contemplated by § 1322(b)(5) of the Bankruptcy Code.

Washington Mutual's counsel commented in the initial memorandum submitted to the court and at the hearing on the motion to dismiss that the plaintiffs' payment history reflected a sporadic and often untimely remittance of the monthly amounts due. This chronic practice result-

ed in the Chapter 13 trustee's filing several motions to dismiss the plaintiffs' bankruptcy case. While this is likely true and could significantly impact subsequent decisions to be made in this proceeding, such as class certification, it cannot be considered as a factor in the determination of the motion to dismiss.

As characterized by the plaintiffs in their memorandum, submitted in opposition to the motion to dismiss, Washington Mutual premised its motion on the following:

(1) Washington Mutual's practices are not illegal and improper as a matter of law: "Assuming arguendo that Washington Mutual did charge the Harrises late fees when they made their post-confirmation mortgage payments under the plan to the Trustee, Washington Mutual had the right to do so under the very terms of its Note and Deed of Trust with the Harrises, as provided by Section 1322(b)(2)." (Washington Mutual's Memorandum In Support of Rule 12(b)(6) Motion at page 14).

(2) Even if Washington Mutual's practices are illegal and improper, as a matter of law, the plaintiffs have no "right of action" to obtain relief from this Court from "conduct that violates the Bankruptcy Code generally or constitutes an abuse of the bankruptcy process." (Washington Mutual's Memorandum In Support of Rule 12(b)(6) Motion at page 9).

(3) Even if Washington Mutual's practices are illegal and improper and the plaintiffs otherwise have a "right of action" to obtain relief from this Court, the plaintiffs are barred by res judicata principles from obtaining such relief based on a Agreed Order entered on September 7, 2001, on a Motion brought by the Chapter 13 Trustee.

In its post-hearing memorandum, Washington Mutual additionally asserted that this court lacks subject matter jurisdiction to consider the plaintiffs' cause of action.

## IV.

### *RES JUDICATA/COLLATERAL ESTOPPEL*

Washington Mutual contends that the entry of an Agreed Order, dated September 7, 2001, precludes the litigation of the late fee issue in the adversary proceeding now pending before the court. Several documents were presented to the court relative to this issue. They are identified and described as follows:

1. The Chapter 13 trustee's motion for an accounting which was filed on February 22, 2001, in an apparent response to a notification disseminated by PNC Mortgage, a predecessor in interest to Washington Mutual, indicating that the plaintiffs' monthly mortgage payments were being increased to $1,581.05, which was over $1,000.00 per month higher than the payment being made through the Chapter 13 plan.

2. An Order, dated March 29, 2001, directing PNC Mortgage to furnish to the trustee an accounting explaining the elevation of the plaintiffs' monthly mortgage payment from $575.85 to $1,581.05.

3. A letter, dated April 16, 2001, from Morris and Associates, a law firm representing PCN Mortgage, to the Chapter 13 trustee with a computer generated accounting attached. (This accounting reflects numerous entities for "late charges" throughout the course of the plaintiffs' loan history. The accounting also reflects assessments for homeowners' insurance, city taxes, county taxes, and attorney fees.)

4. A motion to compel and for sanctions, dated June 13, 2001, filed by the Chapter 13 trustee who had apparently not received the computer generated accounting which had been mailed by PNC Mortgage earlier.

5. A motion, filed by the Chapter 13 trustee, dated July 13, 2001, for an accounting and to alter the terms of the plaintiffs' mortgage. (This motion asserted that PNC Mortgage had submitted copies of its accounting on July 3, 2001, and indicated that the trustee had reviewed the information and had determined that, "for the most part, the reason this debtor's [sic] mortgage payment would need to be increased was as a result of PNC Mortgage Corporation assessing late charges for each month during the time of the bankruptcy to the debtor's [sic] account." The trustee requested that PNC Mortgage be required "to delete the above said late charges from the debtor's [sic] account and thereafter filing [sic] an amended arrearage amount on this mortgage claim." The motion further requested that the recalculated arrearage be placed at the end of the debtors' note with PNC Mortgage.)

6. An Order, dated July 24, 2001, directing that PNC Mortgage prepare and itemize a listing of the arrearages on the post-petition mortgage payments within twenty days.

7. A letter dated August 15, 2001, submitted by Attorney Guy N. Rogers, Jr., representing Washington Mutual, to the Chapter 13 trustee enclosing "a summary of the shortages that caused the payment to increase from $575.00 per month to $1500.00." (This summary indicated that the total arrearage was comprised exclusively of assessments for property taxes and homeowners insurance.)

8. The Agreed Order, dated September 7, 2001, executed by the attorney for the Chapter 13 trustee, the bankruptcy attorney for the debtors, and Guy N. Rogers, Jr., designated as the attorney for PNC Mortgage. (This order reflected that the trustee's motion for the accounting and to alter the terms of the debtors' mortgage was granted in part, and that any arrearage was not to be paid through the debtors' bankruptcy plan, but would be attached to the end of the debtors' mortgage, with the terms of the note altered to pay $585.00 per month until the arrearage was fully paid. Although Rogers had previously furnished the arrearage summary, the order stated that the mortgage holder would provide a breakdown of the arrearage to the debtors and their attorney.)

Because they are very similar, the theories of res judicata (claim preclusion) and collateral estoppel (issue preclusion) will be considered by the court.

■ The requirements for the application of res judicata were recently rearticulated by the Supreme Court of Mississippi in *Reid v. American Premier Insurance Company,* 814 So.2d 141 (Miss. 2002), to-wit:

The rule of law known as res judicata provides that when a court of competent jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from relitigating claims that were decided or could have been raised in that action. *Walton v. Bourgeois,* 512 So.2d [698] at 700 [(Miss.1987)]. This Court has listed four identities that must be present be-

fore a subsequent action may be dismissed on the grounds of res judicata:

(1) identity of the subject matter of the original action when compared with the action now sought to be precluded;

(2) identity of underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions;

(3) identity of the parties to the two actions, an identity met where a party to the one action was in privity with a party to the other; and

(4) identity of the quality or character of a person against whom the claim is made.

*Dunaway v. W.H. Hopper & Assocs., Inc.,* 422 So.2d 749, & 751 (Miss.1982).

814 So.2d at p. 145.

■ The Fifth Circuit Court of Appeals in *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 151 (5th Cir.1981), set forth the following test for applying the doctrine of collateral estoppel, to-wit:

1. The issue to be precluded must be identical to that involved in the prior action.

2. The issue must have been actually litigated in the prior action, and

3. The issue determined in the prior action must have been necessary to the resulting judgment.

*See also, In re Shuler,* 722 F.2d 1253 (5th Cir.1984), and *In re Nunley,* 237 B.R. 907 (Bankr.N.D.Miss.1999).

■ As noted hereinabove, Washington Mutual contends that the entry of the Agreed Order, dated September 7, 2001, precludes the litigation of the plaintiffs' present cause of action. Succinctly stated, for res judicata to apply, there must be an identity of the subject matter of the previous cause of action with the subject matter of the present cause of action, and, for collateral estoppel to apply, the issue in the present cause of action must be identical to the issue actually litigated in the prior cause of action.

At one point in time, the Chapter 13 trustee was obviously concerned about the assessment of late fees. The language in the July 13, 2001, motion confirms this conclusion. However, this concern was clearly obfuscated as a result of the letter and arrearage summary submitted on behalf of Washington Mutual by Attorney Guy Rogers, Jr., which indicated that the arrearage had resulted exclusively from the assessment of property taxes and homeowners' insurance. There was no mention of late fees at all. This summary, which was a material departure from the previous accounting furnished by PNC Mortgage, significantly altered the arrearage picture and conveyed to the trustee an incomplete representation of what actually had occurred. This summary predated the Agreed Order entered on September 7, 2001, and substantially reshaped the subject matter, as well as, the issue determined by that order.

Washington Mutual has urged the court to disregard the letter and summary submitted by Attorney Rogers to the Chapter 13 trustee. These documents were presented to the court by the attorneys now representing the plaintiffs in arguing their response to the motion to dismiss, and they were also appended to the post-trial memorandum submitted to the court on behalf of Washington Mutual. The court cannot close its eyes to otherwise admissible documents, the existence of which has been openly acknowledged by all of the parties.

Considering the above factors, the court is of the opinion that neither the theory of res judicata nor the theory of collateral estoppel are applicable.

## V.

### *The Nature of the Plaintiffs' Cause of Action Against Washington Mutual*

Since its claim is secured exclusively by the plaintiffs' residential real property, Washington Mutual relies heavily on § 1322(b)(2) of the Bankruptcy Code[1], which provides as follows, to-wit:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> > (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims

■■■ As noted hereinabove, the plaintiffs' Chapter 13 plan, insofar as it addressed the claim of Washington Mutual, was confirmed pursuant to § 1322(b)(5) of the Bankruptcy Code, which provides as follows, to-wit:

> (5) *notwithstanding paragraph (2) of this subsection,* provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due (emphasis supplied)

For purposes of deciding the motion to dismiss, the court must assume, as alleged in the complaint, that Washington Mutual's practice of assessing late charges against the plaintiffs was improper. However, once the actual merits of the complaint are reached, the plaintiffs should not expect relief if they made their payments untimely to the trustee, which, in turn, unreasonably delayed the trustee's remittance to Washington Mutual. On the other hand, the outcome might well be different if the plaintiffs timely made their payments to the trustee which allowed the trustee to then remit to Washington Mutual in conformity with the trustee's standard distribution procedures.

As a "follow-up" to the comment expressed in the preceding paragraph, the court relies on the well-reasoned conclusions expressed in *In re Lee,* 167 B.R. 417 (Bankr.S.D.Miss.1992), aff'd 168 B.R. 319 (S.D.Miss.1993) aff'd 22 F.3d 1094 (5th Cir.1994). In that particular case, Green Tree Acceptance Corporation filed multiple motions for relief from the automatic stay because the payments made by the Chapter 13 trustee post-confirmation were received later than the dates specified in the promissory notes executed by the respective debtors. Green Tree contended that being compelled to accept payments in this manner constituted a modification of its contract rights which was prohibited by § 1322(b)(2). The bankruptcy court offered the following comments:

> Furthermore, Green Tree's argument that the Court should hold the Debtors responsible for the manner in which the Trustee disburses funds is wholly unfounded. The Bankruptcy Code requires only that the debtor fulfill its obligations under the terms of the plan in order to claim the protection of the automatic stay. As explained in *In re Rutenbeck,* 78 B.R. 912 (Bankr.E.D.Wis. 1987):
>
> > Delay in distribution of funds by the chapter 13 trustee following confirmation is not uncommon and can be caused for any number of reasons,

---

**1.** Hereinafter, all Code sections cited shall be considered as sections of the U.S. Bankruptcy Code unless otherwise designated.

none of which is the fault of the debtor. A secured creditor will not be given relief from the stay, nor any creditor, secured or unsecured, relief under § 1307(c), where the debtor has been making payments to the trustee in accordance with a confirmed plan, and the creditor's sole complaint is that the trustee has been slow in paying out to the creditor.

*Id.* at 913.

167 B.R. at 427.

Although neither of these decisions [*Matter of Nobleman,* 968 F.2d 483 (5th Cir.1992) and *Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236 (5th Cir.1984)] addressed whether a creditor holding a home mortgage is entitled to disbursements from the chapter 13 trustee in accordance with the due date contained in the terms of the original contract, both cases involved home mortgages being paid through the chapter 13 plan, and no suggestion was made by the court that such a method of payment is improper under § 1322(b)(2). As previously stated, the Trustee's office disburses between 10,000 and 15,000 checks to creditors each month. It would be extremely burdensome for the Chapter 13 Trustee to review every contract involving a home mortgage, determine the due date, and pay each individual creditor in accordance with its particular contract. If Green Tree's argument were accepted by this Court, then the only way a debtor could comply with the Bankruptcy Code would be to pay any secured creditor protected from modification of its rights under § 1322(b)(2) outside of the plan. Such a result is not mandated by § 1322(b)(2).

. . . . .

In summary, although material default under the terms of a confirmed plan is a basis for relief from the automatic stay, Green Tree has failed to prove material default in any of the instant cases. The method used by the Chapter 13 Trustee in disbursing funds to creditors under the plan has no bearing on whether a debtor has complied with the terms of his confirmed plan. Furthermore, Green Tree is adequately protected by the confirmed plans, and has shown no cause for relief from the automatic stay based on its alleged modification of rights in violation of Bankruptcy Code § 1322(b)(2) resulting from the method under which the Chapter 13 Trustee's office operates.

167 B.R. at 428–29.

In its vigorous reliance on the anti-modification provisions of § 1322(b)(2), Washington Mutual has ignored the opening clause in § 1322(b)(5), which plainly states, "notwithstanding paragraph (2) of this subsection." Congress clearly intended to allow Chapter 13 debtors to cure arrearages within a reasonable time while maintaining the regular payments that would be due under the terms of the indebtedness, notwithstanding the requirements of § 1322(b)(2). Consequently, the court is of the opinion that Washington Mutual's singular reliance on § 1322(b)(2) is misplaced.

Washington Mutual also takes the position that even if its conduct has run afoul of the provisions of § 1322(b)(5) and the holding in *In re Lee,* the plaintiffs are without recourse since they have no "private right of action" to obtain relief for conduct that violates the Bankruptcy Code generally.

This court recognizes that § 1322(b)(5) has no counter-part such as § 362(h), the section that expressly provides specific remedies for the violation of § 362(a). However, that does not mean that Washington Mutual or any other creditor can

disregard without restraint the provisions of the Bankruptcy Code. Section 105(a) provides as follows:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Although dealing with an alleged violation of § 524(a)(2), the bankruptcy discharge injunction, a case which accurately addresses the significance and utility of § 105(a) is *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439 (1st Cir.2000). The First Circuit offered the following comments, to-wit:

As this Court has previously recognized, "[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers—where 'necessary' or 'appropriate'—to facilitate the implementation of other Bankruptcy Code provisions." *Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir.1997); *see also Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir.1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir.1991). While it is true that the considerable discretion conferred on courts sitting in bankruptcy by *§ 105* is not unlimited, in that it is not " 'a roving commission to do equity,' " *Noonan*, 124 F.3d at 27 (quoting *Chiasson v. J. Louis Matherne & Assocs.*, 4 F.3d 1329, 1334 (5th Cir. 1993) ), a court is well within its authority if it exercises its equitable powers to enforce a specific code provision, *see id.; SPM Mfg.*, 984 F.2d at 1311, such as

*§ 524*. Thus, *§ 105* does not itself create a private right of action, but a court may invoke § 105(a) "if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code," *Noonan*, 124 F.3d at 28, so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights, *see id.; SPM Mfg.*, 984 F.2d at 1311.

It follows, therefore, and the parties agree, that *§ 105* provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have. *See In re Hardy*, 97 F.3d at 1389; *In re Elias*, 98 B.R. 332, 337 (N.D.Ill.1989); *Cherry, III v. Arendall (In re Cherry, III)*, 247 B.R. 176, 186–87 (Bankr.E.D.Va.2000); *Matthews v. United States (In re Matthews)*, 184 B.R. 594, 598 (Bankr.S.D.Ala.1995). Those contempt powers inherently include the ability to sanction a party. *See In re Hardy*, 97 F.3d at 1389–90 (recognizing that courts' statutory contempt powers must include the award of monetary and other forms of relief "to the extent such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code"); *Cherry*, 247 B.R. at 187 ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.").

Against this background it is clear, as the appellee conceded at oral argument, that a bankruptcy court is authorized to invoke *§ 105* to enforce the discharge injunction imposed by *§ 524* and order damages for the appellant in this case if the merits so require. Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and puni-

tive damages, when creditors have engaged in conduct that violates § 524. See, e.g., In re Hardy, 97 F.3d at 1389–90; In re Elias, 98 B.R. at 337; Cherry, 247 B.R. at 191; In re Arnold, 206 B.R. 560, 568 (Bankr.N.D.Ala.1997); Wiley v. Mason (In re Wiley), 224 B.R. 58, 66 (Bankr.N.D.Ill.1998) (denying motion to dismiss), vacated on other grounds, 237 B.R. 677 (Bankr.N.D.Ill.1999) (finding class representative inadequate because she suffered no injury); Matthews, 184 B.R. at 599–601; In re Bowling, 116 B.R. 659, 664–65 (Bankr.S.D.Ind.1990); cf. In re Rosteck, 899 F.2d 694, 697 (7th Cir.1990) (affirming sanction for violation of § 524 without reference to § 105 contempt powers). Therefore, we hold that § 524 is enforceable through § 105. See Malone, 245 B.R. at 395.

. . . .

As a district court sitting in bankruptcy is similarly authorized to invoke its equitable powers under § 105 when necessary to carry out the provisions of the Bankruptcy Code, see Jove Eng'g, 92 F.3d at 1554; Green v. Drexler (In re Feit & Drexler, Inc.), 760 F.2d 406, 414–15 (2d Cir.1985); Malone, 245 B.R. at 394, we reverse the district court's holding that appellant could only bring her claims in the court that issued the original discharge order and remand for the district court's consideration of enforcement of § 524 through § 105. See Williams, 244 B.R. at 867–68. If the district court determines that it is appropriate to refer the matter back to the bankruptcy court under 28 U.S.C. § 157 and the Rhode Island standing order, see McGlynn v. Credit Store, Inc., 234 B.R. 576, 583–84 (D.R.I.1999), the bankruptcy court can accordingly resolve appellant's claims.

. . . .

On remand the district court should determine initially whether, in spite of the District of Rhode Island's standing order adopted under 28 U.S.C. § 157(a) it wishes to, and may appropriately, retain jurisdiction under 28 U.S.C. § 157(d); and if the district court determines that retention is inappropriate, shall refer the entire case to the United States Bankruptcy Court for the District of Rhode Island, see In re Wiley, 224 B.R. at 63, in which case the bankruptcy court can then consider the merits of class certification or consider appropriate individual relief. See, e.g., id. at 65–66, 82 (approving the certification of class actions under § 105 for systemic violations of the Bankruptcy Code). Accordingly, we vacate the district court's judgment on counts I and II of the Complaint and remand for proceedings consistent with this opinion.

Id. at page 444–447.

As a result of the foregoing analysis, this court concludes that the plaintiffs do indeed have recourse against Washington Mutual for its alleged violations of the Bankruptcy Code, as well as, that this court's authority to afford relief flows through its equitable powers conveyed by § 105(a). If bona fide violations of the Bankruptcy Code have been committed by either debtors or creditors, the legitimate policing of those violations is not a "roving commission to do equity." Rather, it is the exercise of clearly articulated statutory authority to insure that the bankruptcy process functions in an orderly manner.

## VI.

*Section 362(a) of the Bankruptcy Code*

At the hearing on the motion to dismiss, the court questioned whether the plaintiffs intended to rely on § 362(a) as an avenue of relief since the alleged wrongful conduct of Washington Mutual occurred post-peti-

tion and post-confirmation. The plaintiffs amended complaint in its final paragraph contained "catch all" language that could conceivably encompass any provision in the Bankruptcy Code. The question was raised, in part, because of the language in the order confirming the plaintiffs' Chapter 13 plan, which coincidentally appears in all of the Chapter 13 plans confirmed in this district, to-wit: "All property shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge, or conversion. The debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the trustee." The court was simply curious as to whether the automatic stay was implicated even though it was not expressly pled.

The plaintiffs elected not to address this concern in a post-hearing memorandum. Consequently, the court will assume that this avenue of relief will not be pursued as this proceeding goes forward.

## VII.

### Subject Matter Jurisdiction

As a parting shot, Washington Mutual posited, somewhat obliquely, that this court lacks subject matter jurisdiction to consider this adversary proceeding. Washington Mutual initially stated that an order has never been entered reopening the plaintiffs' bankruptcy case. While it is true that a reopening order has never been entered, a review of the court file indicates that such an order is not necessary since the case was never closed. Apparently, even the plaintiffs' attorneys were unsure of this factor since they submitted on August 7, 2002, a motion to reopen the case and the reopening filing fee, but the motion was not filed and the fee was returned since neither were necessary.

The plaintiffs' Chapter 13 plan was confirmed on January 30, 1997, and they received their discharge on July 11, 2002. Shortly thereafter, the adversary proceeding was filed, and orders were entered, without objection, approving the employment of the attorneys now representing the plaintiffs respectively on November 7, 2002, and May 29, 2003.

Because the plaintiffs met the disposable income test, their confirmed Chapter 13 plan provided no distribution to the class of unsecured creditors. The orders, approving the employment of the plaintiffs' attorneys to prosecute this adversary proceeding, contemplate that if a recovery is made that the court will be asked to consider whether a distribution to the aforementioned unsecured creditor class should be made. The orders further contemplate that any recovery would be utilized to augment the plaintiffs' bankruptcy estate.

■ The court is, therefore, of the opinion that Washington Mutual's request to dismiss on the basis that this court lacks subject matter jurisdiction is untimely and not well taken. However, since a motion challenging jurisdiction may be raised at any time, this court will not hesitate to revisit such a motion when and if the timing is appropriate.

On the subject of jurisdiction, the court would mention a recent article written by Professor Elizabeth Warren and Professor Jay L. Westbrook, entitled "Class Actions for Post–Petition Wrongs: National Relief Against National Creditors," *American Bankruptcy Institute Journal*, Vol. XXII (March, 2003). While the overall discussion is certainly more appropriate for issues that might later arise in this adversary proceeding, the authors' comments on the jurisdictional foundation for a cause of action such as that currently before this court is noteworthy, to-wit:

Three points are central. The first is that it is a mistake to begin the analysis with bankruptcy court jurisdiction. We teach our students to enter the jurisdictional wonderland of bankruptcy always through one gate: What is the bankruptcy jurisdiction of the federal district court: Once that question is answered, then the allocation of function within the federal courthouse can be addressed. Second, the conduct under attack in each category of case is the violation of a federal statute, not a court order. Third, all three are post-petition wrongs against the debtor, not the estate, and therefore are not property of the estate to be administered under § 1334(e) of Title 28. *See In re Noletto,* 244 B.R. 845 (Bankr.S.D.Ala.2000).

## VIII.

### *Conclusion*

For the reasons set forth hereinabove, the court concludes that Washington Mutual's motion to dismiss is not well taken. It will be overruled by a separate order entered contemporaneously herewith.