REVISED APRIL 12, 2012

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2012

No. 10-60106

Lyle W. Cayce
Clerk

WILLIE E. LOVE,

Plaintiff – Appellant

v.

TYSON FOODS, INC.,

Defendant – Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, WIENER, and HAYNES, Circuit Judges.

KING, Circuit Judge:

The district court granted summary judgment dismissing Willie E. Love's lawsuit against Tyson Foods, Inc. It held that Love was judicially estopped from bringing his claims against Tyson because he had failed to disclose them in his Chapter 13 bankruptcy proceeding. We AFFIRM.

I. FACTUAL AND PROCEDURAL BACKGROUND

Tyson Foods, Inc. ("Tyson") hired Willie E. Love ("Love") as a truck driver on July 23, 2007, but fired Love three days into his orientation after he disclosed that he had tested positive for drug use in 2001. Tyson cited safety concerns as the reason for dismissing Love. However, Love asserted that, because Tyson's

employment application only required applicants to disclose positive drug tests within three years of applying for employment, Tyson had discriminated against him on the basis of his race by terminating him for drug use that occurred prior to the time frame listed in his employment application. Tyson subsequently rehired Love but required him to take monthly drug tests. Tyson terminated Love again on April 2, 2008, when Love tested positive for drug use. Love contended that an antibiotic he was taking caused a false positive result on the drug test, but Tyson declined to consider the results of any subsequent testing.

On May 30, 2008, Love filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that Tyson subjected him to racial discrimination and that his second termination was in retaliation for his prior complaints of racial discrimination related to his first termination. The EEOC issued a notice of right to sue on December 16, 2008, and Love filed the present action on March 12, 2009. He asserted federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981, as well as a state-law claim for intentional infliction of emotional distress.

At the time Love filed both his EEOC charge and his complaint initiating the instant case, Love was a debtor in a Chapter 13 proceeding, having filed a petition for bankruptcy on May 1, 2008. "[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 207–08 (5th Cir. 1999) (emphasis omitted) (citing 11 U.S.C. § 521(1)). "The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one." Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2005) (citation omitted). The disclosure requirement pertains to potential causes of action as well. See In re Coastal Plains, Inc., 179 F.3d at 208. Nonetheless, Love did not disclose his

claims against Tyson and affirmatively stated "NONE" on Schedule B, item 21, which required the identification of "[o]ther contingent and unliquidated claims of every nature." On September 22, 2008, the bankruptcy court confirmed Love's Chapter 13 plan, which did not mention the then-pending EEOC matter and provided that Love's unsecured creditors would receive no payment.

On July 16, 2009, Tyson moved for summary judgment, arguing that Love should be judicially estopped from pursuing his claims against Tyson because he failed to disclose those claims to the bankruptcy court. On July 22, 2009, Love filed an amended schedule in his bankruptcy case listing his claims against Tyson. On January 7, 2010, the district court granted Tyson's motion for summary judgment and dismissed Love's case. Love timely appealed.[1]

## II. DISCUSSION

### A. The Doctrine of Judicial Estoppel

The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding. See Reed v. City of Arlington, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc). The aim of the doctrine is to "protect the integrity of the judicial process." New Hampshire v. Maine, 532 U.S. 742, 749–50 (2001) (citation and internal quotation marks omitted). "Because the doctrine [of judicial estoppel] is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." In re Coastal Plains, Inc., 179 F.3d at 205 (citation omitted). Moreover, "'the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all

---

[1] The record reflects that Love was represented by counsel in the proceedings before the district court and by different counsel in his Chapter 13 bankruptcy case. Love proceeds pro se on appeal.

of their assets.'" Id. at 208 (emphasis omitted) (quoting Rosenshein v. Kleban, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)).

In determining whether to apply judicial estoppel, we primarily look for the presence of the following criteria: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." Reed, 650 F.3d at 574 (citations omitted). However, judicial estoppel is not governed by "inflexible prerequisites or an exhaustive formula for determining [its] applicability," and numerous considerations "may inform the doctrine's application in specific factual contexts." New Hampshire, 532 U.S. at 751. This court has noted that "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." Jethroe, 412 F.3d at 600.

B. Standard of Review

"We review a judicial estoppel determination for abuse of discretion." Id. at 599–600; see also Kane v. Nat'l Union Fire Ins. Co., 535 F.3d 380, 384 (5th Cir. 2008) (explaining that a district court's application of judicial estoppel is reviewed for abuse of discretion, even when the district court granted summary judgment on that basis). "[D]eference . . . is the hallmark of abuse-of-discretion review." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997). Nonetheless, "[a] district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." McClure v. Ashcroft, 335 F.3d 404, 408 (5th Cir. 2003). Whether a debtor's failure to disclose claims was inadvertent presents a question of fact. See Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010); cf. Cont'l Cas. Co. v. McAllen Indep. Sch. Dist., 850 F.2d 1044, 1046 (5th Cir. 1988). As discussed above, the district court granted summary judgment in Tyson's

favor, finding that Love had made no effort to demonstrate inadvertence. Reversal of this finding is proper if we find that there is a genuine factual dispute regarding whether Love failed to disclose his claims inadvertently. See FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); Buffalo Marine Servs. Inc. v. United States, 663 F.3d 750, 753 (5th Cir. 2011) ("We review a grant of summary judgment de novo, applying the same standard as the district court.").

C. There is No Fact Issue Regarding Love's Inadvertence

Love's sole argument on appeal is that his failure to disclose his claims was inadvertent. "[I]n considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." In re Coastal Plains, Inc., 179 F.3d at 210 (emphases omitted). Love concedes that he knew about the undisclosed claims against Tyson, but he argues that he had no motive to conceal his claims.

In its motion for summary judgment, Tyson set forth a motivation for Love to keep his claims concealed—the prospect that Love could keep any recovery for himself. As one court has stated, "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." Thompson v. Sanderson Farms, Inc., No. 3:04CV837-WHB-JCS, 2006 U.S. Dist. LEXIS 48409, at *12–13 (S.D. Miss. May 31, 2006) (citation omitted). Similarly, this court has found that debtors had a motivation to conceal where they stood to "reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors." Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.), 374 F.3d 330, 336 (5th Cir. 2004). After Tyson set out this

motivation to conceal, it fell to Love to show that the omission of his claims from his schedule of assets was inadvertent. See Jethroe, 412 F.3d at 600–01.

In response to Tyson's motion for summary judgment, Love failed to set forth any argument or otherwise create a fact issue regarding whether he acted inadvertently. Love's five-page brief discussed only two of the three criteria that are central to this court's judicial estoppel analysis and conspicuously omitted any discussion of inadvertence. The response even failed to mention the words "inadvertent," "motive," or "intent," or to suggest that inadvertence had any bearing on the court's determination of whether judicial estoppel should apply. Love instead contended that: (1) "Plaintiff's positions are no longer inconsistent as [Love] supplemented his Schedule to list the current case as an asset in his bankruptcy"; (2) "the Defendant has failed to show the bankruptcy court has accepted the Plaintiff's prior position that he had no contingent claims"; (3) "Plaintiff will not derive any unfair advantage or impose any unfair detriment on any opposing party if not estopped"; and (4) "Plaintiff's bankruptcy is still pending and any monies paid by Defendant through settlement or judgment in this case would go into the bankruptcy to pay Plaintiff's creditors first."

Critically, Love's arguments before the district court did nothing to refute Tyson's allegations or explain why Love did not disclose his claims when his disclosure obligations first arose. His first two arguments clearly do not speak to his motive to conceal his claims against Tyson. With respect to Love's third argument, whether Tyson or Love would accrue an unfair detriment or benefit if the lawsuit were allowed to go forward after Tyson forced Love to disclose his claims is an entirely different issue than whether Love had a financial motive to conceal his claims against Tyson at the time Love failed to meet his disclosure obligations, which is the relevant time frame for the judicial estoppel analysis. See In re Superior Crewboats, Inc., 374 F.3d at 336; Robinson, 595 F.3d at 1276 ("When reviewing potential motive, the relevant inquiry is intent at the time of

6

non-disclosure." (citing Casanova v. Pre Solutions, Inc., 228 F. App'x 837, 841 (11th Cir. 2007))). Regarding Love's fourth argument, Love did state that he would pay his creditors before collecting any money from his claims against Tyson, but he made this assertion only after Tyson brought his nondisclosure to light. Love's disclosure obligations arose long beforehand, and his statement about his post-disclosure conduct again fails to speak to his motivations while he was obligated to disclose his claims but had not yet done so. Consequently, we agree with the district court's conclusion that Love ultimately provided "no basis for concluding that [the] failure to disclose th[e] litigation [against Tyson] to the bankruptcy court was 'inadvertent.'" Thus, the district court did not abuse its discretion by applying judicial estoppel to Love's claims.

D. The Dissent

The dissent would hold that the district court should not have estopped Love from asserting his claims because Tyson failed to carry its burden to establish that judicial estoppel should apply. According to the dissent, Tyson's assertion that Love stood to gain personally by concealing his claims was incorrect as a matter of law, and thus Love could not have been motivated by a desire to conceal his claims. As a consequence, the dissent contends that the summary judgment burden never shifted to Love to explain his nondisclosure.[2] The dissent further asserts that, even if the burden was properly shifted to Love, his arguments before the district court were sufficient to create a fact issue regarding inadvertence, making summary judgment improper.

---

[2] As we discuss below, Love could have enjoyed personal gains from concealing his claims had they remained undisclosed. Thus, Tyson did set out a valid motivation for Love to keep his claims concealed. This motivation and the fact that Love did not timely disclose his claims caused the burden to shift to Love to provide some explanation for his failure to meet his disclosure obligations. See Bayle v. Allstate Ins. Co., 615 F.3d 350, 355 (5th Cir. 2010) ("Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial.").

There are several key problems with the dissent's analysis. Despite precedent calling for consideration of a debtor's inadvertence or lack thereof, the dissent essentially eliminates consideration of a debtor's motives from the calculus. See Reed, 650 F.3d at 574. The dissent concludes that, because Love's claims against Tyson were the property of his bankruptcy estate and Love was obligated to pursue these claims on his creditors' behalf, Love was necessarily acting for the benefit of his creditors from the inception of his lawsuit against Tyson and thus had no motive to conceal his claims. However, the dissent fails to acknowledge that Love did have a strong incentive to keep his claims concealed. If Tyson had not brought Love's claims to light, Love could have kept any recovery for himself, even though the claims belonged to the bankruptcy estate. Thus, the dissent's assumption that Love was discharging his duties under the law supplants the inadvertence analysis and automatically attributes good motives to Love despite very real incentives for Love to conceal his claims and Love's utter failure to explain why he failed to meet his disclosure obligations.

Moreover, even after Love disclosed his claims, it is unclear whether his creditors would ultimately share in any recovery. Although Love amended his schedule of assets to list his claims against Tyson, his plan was not amended to provide that his creditors would be paid out of any recovery. Thus, there is nothing of record that presently requires Love to pay his creditors. Consequently, if Love were to recover any money from Tyson after his discharge (currently scheduled for late 2013) without any amendment to his plan, the recovery would go to Love to the exclusion of his creditors. See 11 U.S.C. §§ 554(c), 1329. In fact, Love's failure to disclose his claims when he was required to do so has caused considerable delay, increasing the likelihood that his lawsuit against Tyson would continue past the date his discharge is scheduled to occur. The possibility that Love's creditors might not benefit from

any recovery again demonstrates that the dissent is incorrect to assume that Love would be acting in the interest of his creditors if allowed to continue pursuing his claims against Tyson.

Further, the dissent curiously limits its examination of Love's motivations to conceal his claims to those that existed after Tyson had forced disclosure. This examination, however, assesses Love's motives from the wrong point in time and completely overlooks the relevant inquiry, which analyzes Love's motives as he was potentially concealing his claims (i.e., failing to disclose his claims despite a legal obligation to list them in his schedule of assets). See In re Superior Crewboats, Inc., 374 F.3d at 336; Robinson, 595 F.3d at 1276. The proper analysis would give heed to the potential windfall Love could have reaped if his claims had remained undisclosed. Moreover, the key advantage of concealment—the debtor's ability to collect any recovery on claims without his creditors' knowledge—will be removed in every instance that the debtor is forced to disclose his claims. Thus, the dissent's analysis again improperly excludes all consideration of the debtor's relevant motivations.

The dissent further contends that Love created a fact issue regarding inadvertence by asserting that he would "not derive any unfair advantage or impose any unfair detriment on any opposing party if not estopped." The dissent's analysis, however, improperly conflates the issues of whether a debtor acted inadvertently when concealing his claims and whether a party would enjoy an unfair advantage or suffer an unfair detriment if judicial estoppel were not applied. The dissent cites New Hampshire v. Maine, 532 U.S. 742 (2001), and Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391 (5th Cir. 2003), for the proposition that the inadvertence analysis turns on the advantages or disadvantages judicial estoppel would cause the litigants. However, these are distinct issues, and the New Hampshire and Hall courts treat them as such. See New Hampshire, 532 U.S. at 751, 753–54; Hall, 327 F.3d at 399–400. Thus,

Love's assertion that he would not gain an unfair advantage if not estopped does not speak to the issue of inadvertence and, as a consequence, does not create a fact issue regarding Love's motive to conceal.

What appears to drive the dissent is a desire to change the law in a way that would prevent nearly every application of judicial estoppel in the bankruptcy context. Time and time again, however, judicial estoppel has been applied by this court and others far more broadly than the dissent's reasoning would allow. See, e.g., In re Superior Crewboats, Inc., 374 F.3d 330; In re Coastal Plains, Inc., 179 F.3d 197; Kamont v. West, 83 F. App'x 1 (5th Cir. 2003). Although the dissent attempts to distinguish our precedent applying judicial estoppel in the bankruptcy context, the distinctions do not hold up when the dissent's rationale is followed to its logical end. Under the dissent's analysis, if it is theoretically possible that a non-disclosing debtor is pursuing claims for the benefit of his creditors (because the claims are property of the estate), then a court must assume that the debtor is, in fact, acting on his creditors' behalf and that any nondisclosure of those claims was inadvertent. However, under this rationale, a dishonest debtor could, in almost every case, conceal his claims from his creditors and assert them without his creditors' knowledge unless an opponent forced disclosure. Upon being forced to disclose his claims, a debtor could then amend his schedules to include the claims, as Love did here, or take other corrective action, and his nondisclosure would be considered inadvertent.[3]

---

[3] There are several ways a dishonest debtor could "cure" his nondisclosure and be considered blameless under the dissent's rationale. For instance, if a debtor had been granted a discharge, he could, in most cases, reopen his bankruptcy case under 11 U.S.C. § 350(b) and then continue to assert his claims in the interest of his creditors. Also, in the case of a concealed claim that no longer belonged to the estate because it had been abandoned by the trustee, the abandonment could be revoked, and the debtor could then pursue the claim on behalf of the estate. See Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1521 n.10 (5th Cir. 1989). Only in rare situations, such as the one in Jethroe where the debtor could not have reopened her bankruptcy case, could a debtor be found to have a motive to conceal under the dissent's reasoning. See 412 F.3d at 599.

However, this court has observed that "'[a]llowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them.'" In re Superior Crewboats, Inc., 374 F.3d at 336 (second alteration in original) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002)); see also Thompson, 2006 U.S. Dist. LEXIS 48409, at *23 (stating that "[a] plaintiff/debtor should not be allowed to amend a bankruptcy petition only after his omission has been challenged by an adversary") (citation and internal quotation marks omitted). We decline to invite such abuses here.

Despite the dissent's assertions to the contrary, our decisions in Reed and Kane do not require us to reach a different result. Most glaringly, the equities in Reed were very different than those in the instant case. In Reed, the debtor was prevented from realizing any gains at all on claims he had not timely disclosed to his creditors. 650 F.3d at 573. Thus, unlike the instant case where Love could potentially share in the gains from his lawsuit, only the creditors stood to benefit in Reed.[4] Moreover, the claims at issue in both Reed and Kane were ultimately pursued by innocent Chapter 7 trustees, and not by the debtors themselves. See id. at 574–75; Kane, 535 F.3d at 383–84. According to the dissent, throughout his lawsuit against Tyson, Love was in an "analogous position to a trustee" because he "stood in a fiduciary capacity to act on behalf of the estate the moment he filed for bankruptcy." However, although it is true

---

[4] The dissent suggests that the district court should have fashioned a remedy that would only punish the debtor, as the district court had done in Reed. First, no such argument was made to the district court or to this court. Second, in Reed, the debtor had already won a judgment when his nondisclosure was brought to light. 650 F.3d at 572–73. Here, by contrast, Love is a Title VII plaintiff whose claims against Tyson are likely far from judgment, and the success of those claims would almost certainly require his participation. A district court ruling on a judicial estoppel defense could conclude that prohibiting Love from sharing in any recovery would remove most, if not all, of his incentives to participate in the lawsuit and could prove fatal to his claims.

that Love, like a trustee, did owe fiduciary duties to his creditors, he is still also a debtor—one who did not meet his disclosure obligations and subsequently failed to provide any basis for the district court to conclude that his nondisclosure was inadvertent. In this situation, we decline to consider Love to be an innocent trustee. Further, if, as the dissent suggests, a debtor who is caught concealing his claims by an opponent could then disclose his claims and automatically be deemed an innocent trustee, there would be virtually no incentive for a debtor to disclose his claims until forced to do so by an opponent.

Finally, the dissent correctly notes that the effect of judicial estoppel on creditors is a consideration that could discourage courts from applying the doctrine. See Reed, 650 F.3d at 576; Kane, 535 F.3d at 387–88. We do not mean to diminish the weight that courts should give to creditors' interests when determining whether judicial estoppel should apply. We merely hold that the district court did not abuse its discretion in applying judicial estoppel to Love's claims after finding that Love failed to create a fact issue regarding his purported inadvertence.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court. Costs shall be borne by Love.

HAYNES, Circuit Judge, dissenting:

I respectfully dissent. The majority opinion improperly places the summary judgment burden of this affirmative defense on Love. To the extent we need to reach the merits, the law supports Love, not Tyson. Finally, even if Love is estopped from benefitting personally, the district court should have considered relief that would have allowed Love's estate to recover on a potential judgment. Indeed, despite our recent en banc opinion reining in the automatic application of judicial estoppel when it harms creditors, the majority opinion affirms a district court that did just that. I would thus reverse and remand for further proceedings.

## I. Summary Judgment Standards

Judicial estoppel is an affirmative defense. See, e.g., Reed v. City of Arlington, 650 F.3d 571, 576 (5th Cir. 2011) (en banc) (citations omitted). When a party moves for summary judgment on an affirmative defense, it "bear[s] the burden of proof at trial and therefore must show that it has produced enough evidence to support the findings of fact necessary to win." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 237 (3d Cir. 2007). Therefore, even to reach the question of whether Love has shown that judicial estoppel does not apply, Tyson must have proven that it does. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (stating that summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").[1]

---

[1] The majority opinion correctly notes that application of judicial estoppel is reviewed under the abuse of discretion standard. We have used that standard even in summary judgment cases without much analysis of the rationale for doing so. See, e.g., Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2005). We are certainly bound by those

We have required that a party asserting judicial estoppel must show that: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." Reed, 650 F.3d at 574. It is important to note, however, that these three elements only limit judicial estoppel's application; they are necessary but not always sufficient. See, e.g., Kane v. Nat'l Union Fire Ins. Co., 535 F.3d 380, 385-86 (5th Cir. 2008); Browning Mfg. v. Mims (In re Coastal), 179 F.3d 197, 206 (5th Cir. 1999).[2]

A. Tyson's Proof

Love does not take issue with the first two estoppel factors on appeal, focusing instead on the inadvertence prong. A "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." In re Coastal, 179 F.3d at 210. As the party invoking judicial estoppel on summary judgment, Tyson thus bore the burden of proof and had to prove, not just hypothesize, that Love had knowledge and a motive for concealment. Tyson failed to do so.

---

cases, and I do not contend otherwise here. I simply note that the reasons for abuse of discretion as the standard make little sense here where summary judgment was granted on the papers and the judicial estoppel concerns a proceeding with which this district judge was not involved. Cf. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30-31 (1st Cir. 2004) (giving reasons for application of abuse of discretion to judicial estoppel that include the idea that "determining whether a litigant is playing fast and loose with the courts has a subjective element. Its resolution draws upon the trier's intimate knowledge of the case at bar and his or her first-hand observations of the lawyers and their litigation strategies" and that abuse of discretion is a "flexible standard."). The district judge here had no "intimate knowledge" of the case at bar or any "first-hand observations" to guide the decision. Indeed, this case was filed in state court on March 12, 2009, removed in April of 2009 and the summary judgment in question was filed in July of the same year before anything else had happened in the case; the case was stayed pending determination of the motion, which occurred without an oral hearing.

[2] Indeed, in Reed, 650 F.3d at 575-79, and Kane, 535 F.3d at 386-89, we did not even address the elements, but rather found judicial estoppel would not apply based on, inter alia, principles of equity and the particular circumstances of each case.

Love's knowledge[3] of the claim during the time of the bankruptcy cannot be disputed as he filed the EEOC claim during the pendency of the bankruptcy. Tyson failed, however, to show as a matter of law that Love had a motive to conceal his claim.

On this third prong, Tyson's sole "proof" was its summary judgment contention that "Love had a motive to conceal [his claim] because any recovery he might receive from this litigation would go to him free and clear of any claims of his creditors, particularly his unsecured creditors who receive nothing under his confirmed plan." This statement is untrue as a matter of law and, thus, did not shift the summary judgment burden to Love to do anything.

Unlike the procedural posture of other cases we have had on this subject, any recovery from Love's cause of action would not be "free and clear of his creditors." Rather, it belongs to the bankruptcy estate. At the time he filed his original schedules, he had a not-yet filed EEOC claim. That "claim" became part of the bankruptcy estate the moment Love filed his petition for bankruptcy by operation of 11 U.S.C. § 541(a)(1).[4] When he subsequently failed to amend his schedules to reveal the EEOC filing, it nonetheless was part of his estate. The bankruptcy court's order confirming Love's plan did nothing to change that. While the typical Chapter 13 plan "vests all of the property of the estate in the debtor," "free and clear of any claim or interest of any creditor," 11 U.S.C. § 1327(b)-(c), Love's plan provided that: "All property [of the estate] shall remain

---

[3] Our case law treats as irrelevant the question of whether the debtor knew of his disclosure or supplementation obligations or otherwise understood that an inchoate claim was a disclosable asset. See, e.g., In re Coastal, 179 F.3d at 212.

[4] That section provides, with limited exceptions not applicable here, that "all legal or equitable interest of the debtor in property as of the commencement of the case" are property of the estate. § 541(a)(1). "The term 'all legal or equitable interests' has been defined broadly to include causes of action." Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Trust), 25 F.3d 1281, 1283 (5th Cir. 1984). It is immaterial to § 541(a)(1) whether a particular asset—such as a cause of action—is scheduled. See Wieburg v. GTE Sw. Inc., 272 F.3d 302, 306 (5th Cir. 2001).

property of the estate and shall vest in the debtor only upon dismissal, discharge, or conversion. The debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the Trustee." This order provision is apparently standard in the Northern District of Mississippi.[5] Thus, at the time Love filed the instant case, he was a Chapter 13 debtor with a confirmed plan that did not give him the right to file the lawsuit on his own behalf. Since we ascribe "knowledge" of the bankruptcy laws to the detriment of debtors, In re Coastal, 179 F.3d at 212, we should also assess the debtor's "motive" in light of the "knowledge" that he would not take "free and clear" if he lied in his schedules.

By operation of the bankruptcy order and applicable law, Love initiated this claim against Tyson on behalf of the estate. While the property—including the cause of action—remained in the estate, Love was authorized to "remain in possession of all property of the estate," 11 U.S.C. § 1306(b), and, as a Chapter 13 debtor, to exercise certain "rights and powers of [the] trustee" with respect to the estate's property, 11 U.S.C. § 1303.[6]

Finally, because Love is obliged to recover on behalf of the estate, any judgment does not belong to him. Even if Love had not disclosed the claim, that asset would belong to the estate under 11 U.S.C. § 554(c)-(d)—at least unless his recovery is greater than all his debts. See COLLIER ON BANKRUPTCY ¶ 554.03

---

[5] See Harris v. Wash. Mut. Home Loans, Inc. (In re Harris), 297 B.R. 61, 72 (Bankr. N.D. Miss. 2003).

[6] Every circuit to have considered the question has held that the "rights and powers" that the Chapter 13 debtor enjoys under § 1303 include the power to sue on claims that are property of the estate on behalf of the estate. See, e.g., Smith v. Rockett, 522 F.3d 1080, 1081 (10th Cir. 2008) (collecting cases).

As the Seventh Circuit explained, "[t]he chose in action, here a discrimination case, belongs to the estate and was being prosecuted for the benefit of its creditors. It would frustrate the essential purpose of [§] 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit [of] the estate." Cable v. Ivy Tech State Coll., 200 F.3d 467, 473 (7th Cir. 1999). That is precisely the case here.

(Matthew Bender, 16th ed. 2011) ("[I]f property was not properly scheduled by the debtor, it is not automatically abandoned at the end of the case. . . . Even after the case is closed, the estate continues to retain its interest in unscheduled property."); see also Kane, 535 F.3d at 387 (citing In re Miller, 347 B.R. 48, 53 (Bankr. S.D. Tex. 2006), for the proposition that unscheduled claims that belong to the estate may be administered through a reopened bankruptcy case).

The majority opinion faults this analysis, stating that it improperly assumes that Love was "acting for the benefit of his creditors from the inception of his lawsuit . . . and automatically attributes good motives to Love despite very real incentives for Love to conceal his claims." I do not make this attribution, however. Rather, I approach the analysis from the viewpoint of the movant's burden: a movant who raised an affirmative defense and appropriately bears the burden at trial. I do not reason that Love "necessarily" had good motives, only that Tyson has not shown as a matter of law that he "necessarily" had "bad" ones.

Accordingly, Tyson cannot discharge its affirmative summary judgment burden merely by arguing—incorrectly as a matter of law—that Love stood to recover on his claim "free and clear of any claims of his creditors" at the time he failed to amend his bankruptcy schedules. Tyson thus failed to establish an element essential to its affirmative defense in the district court, and summary judgment should have been denied. In response to the majority opinion's argument that this dissenting opinion removes judicial estoppel as an option, I reply that to hold that summary judgment in Tyson's favor is inappropriate is not tantamount to saying that summary judgment should be granted to Love.

B. Love's Response

We should stop here, as I have shown that no summary judgment burden "shifted" to Love. However, even if it did, I disagree that Love failed to respond in kind, creating a material factual dispute on whether he had motive to conceal.

Love's summary judgment response set forth the Supreme Court's judicial estoppel standard from New Hampshire v. Maine, 532 U.S. 742, 751 (2001). See also Hall v. GE Plastic Pac., 327 F.3d 391, 399 (5th Cir. 2003). There, he disclaimed the third prong of that standard.[7] Indeed, he expressly responded to Tyson's claim that his "motive" was to gain money "free and clear" by arguing in response that any recovery would not be paid to him but to the estate. He stated:

> Plaintiff will not derive any unfair advantage or impose any unfair detriment on any opposing party if not estopped. Plaintiff's bankruptcy is still pending, and any monies paid by Defendant through settlement or judgment in this case would go into the bankruptcy to pay Plaintiff's creditors first. To the contrary, if Plaintiff is judicially estopped his creditors would be injured, and would be prevented from receiving any monies from the current case.

Thus, if Tyson's mere allegation that Love's motive was to gain an unfair personal advantage by taking money "free and clear of creditors" is enough to satisfy its summary judgment burden on "motive," then Love's statement that any monies paid "would go into the bankruptcy to pay Plaintiff's creditors first" should similarly discharge his non-movant's burden.[8] The majority opinion

---

[7] The majority opinion condemns Love for framing his argument based on the Supreme Court's three-prong test, which differs slightly from that set out by our precedent. See New Hampshire, 532 U.S. at 751. The majority opinion states that New Hampshire's third prong—"whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped"—is an entirely different issue than Love's motive at the time of nondisclosure. I agree that motive must be viewed at the time of nondisclosure, rather than after a defendant asserts its judicial estoppel defense. I cannot agree, however, that these issues are entirely distinct.

Indeed, other circuits have introduced the theory of inadvertence into New Hampshire's third prong, indicating that the two ideas are not entirely separate. See, e.g., Stallings v. Hussmann Corp., 447 F.3d 1041, 1048 (8th Cir. 2006); Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996). Moreover, in propounding the third consideration, the Court in New Hampshire cited language indicating that judicial estoppel forbids use of "intentional self-contradiction . . . as a means of obtaining unfair advantage." 532 U.S. at 751 (emphasis added).

[8] I disagree with the majority opinion's reasoning that Love provided no basis for concluding that the nondisclosure was inadvertent. The majority opinion discounts Love's

18

discounts Love's argument because it does not use the "magic words" of "motive" or "inadvertence." We have not so exalted form over substance, particularly in the face of a Supreme Court opinion using the exact language Love used.

The majority opinion contends that whether the claim is "free and clear" or not, a potentially deviant debtor may always attempt to "collect any recovery on claims without his creditors' knowledge." I agree that there is something problematic about a debtor who conceals assets that do not belong to him in an effort to forever keep his creditors in the dark. This hypothetical deviant, however, does not, as a matter of law, establish Love's intent to conceal where his only action was an omission and the claim remains property of the bankruptcy estate.

The Sixth Circuit's reasoning in Browning v. Levy supports my conclusion. 283 F.3d 761, 775-76 (6th Cir. 2002). After citing our decision in In re Coastal, 179 F.3d at 210, on the issue of inadvertence, the court considered whether a debtor (NW) had motive to conceal where it failed to disclose its legal claim, but was acting as a debtor-in-possession, similar to a trustee:

> NW had no motive for concealment in light of its role as a debtor-in-possession, having all the rights and duties of a trustee. 11 U.S.C. § 1107. Under [NW's] Plan of Reorganization, all of the estate's assets are to be reduced to cash by NW and distributed to creditors in accordance with the terms of the plan and the priority

---

argument because he made it only after Tyson brought the nondisclosure to light. This will be the case every time a debtor inadvertently fails to disclose until notified of his obligation at summary judgment.

If Love's explained lack of motive is insufficient to create a fact issue as to inadvertence, I am concerned as to what would be required. Setting aside the unfairness in crediting the defendant's blanket allegation while discounting the plaintiff's blanket denial, the majority opinion's approach effectively creates a presumption in favor of the defendant asserting the affirmative defense. A defendant would simply need to allege knowledge and motive, while the plaintiff needs to prove the negative—that he lacked motive. How would he do so? By filing an affidavit that says "I didn't mean it" or "I had a pure heart"? Would the majority opinion find that type of affidavit useful or appropriate? Moreover, to the extent that the majority opinion contends that this case should be about subjective intent, Tyson put on no evidence about Love's mental state and, therefore, did not satisfy its summary judgment burden.

provisions of the Bankruptcy Code. NW will thus receive no windfall as a result of its failure to disclose its claims, because only [NW's] creditors will receive the distribution of any recovery from SSD. This lack of motive for concealment leads to the conclusion that NW's failure to disclose was, without any evidence to the contrary, inadvertent.

283 F.3d at 775-76 (emphasis added). Importantly, the court also pointed out that the Defendant "provide[d] no evidence that NW intended to 'have its cake and eat it too.'" Id. at 776. Similarly, the Defendant "presented no proof to show that NW intended to convince the bankruptcy court that it had no claims against SSD. NW's omission [was] as consistent with inadvertence as it [was] with an affirmative assertion." Id. at 775.

The effect of the majority opinion is to make judicial estoppel virtually mandatory in all cases of non-disclosure where a party could be said to "know the facts of" his claim, In re Coastal, 179 F.3d at 212, and essentially concludes that any debtor who fails to disclose a claim has a nefarious motive to do so. This reasoning, however improperly presumes fraudulent intent from the outset.[9] However, as the majority opinion correctly noted, "[w]hether a debtor's failure to disclose claims was inadvertent presents a question of fact." Love's

---

[9] Indeed, a debtor like Love would be presumed to have fraudulent intent simply from nondisclosure itself—where "knowledge" is a given, and "motive," according to the majority opinion is "self-evident." The Third Circuit confronted this issue in Ryan Operations, where the court stated:

[P]olicy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding. Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies. While we by no means denigrate the importance of full disclosure or condone nondisclosure in bankruptcy proceedings, we are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the strong medicine of judicial estoppel.

81 F.3d at 364-65 (citations and internal quotation marks omitted).

argument substantively addressed his lack of motive to conceal and directly responded to Tyson's conclusory allegation to the contrary. These circumstances indicate that there is at least a reasonable question as to whether Love had the necessary motive, and thus intent, to conceal his claim against Tyson. Love's conduct was at least as consistent with inadvertence as it was with intentional concealment, and all inferences must be resolved in favor of the nonmovant. The district court failed to take these considerations into account; therefore, summary judgment in favor of Tyson was improper.

## II. Abuse of Discretion

We should reverse and remand for further proceedings based upon the summary judgment posture outlined above. Because the majority opinion reaches the question of whether the district court abused its discretion, however, I will address it as well.

Though "we have applied judicial estoppel to bar an unscheduled claim when others, the debtors or other insiders, would benefit to the detriment of creditors if the claim were permitted to proceed," Kane, 535 F.3d at 387 (citing Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats), 374 F.3d 330, 333 (5th Cir. 2004); In re Coastal, 179 F.3d at 203), those are not the circumstances we have before us. That Love was a Chapter 13 debtor obligated to act on behalf of the estate distinguishes this case from In re Superior Crewboats, 374 F.3d at 333, and In re Coastal, 179 F.3d at 203. Indeed, both were Chapter 7 liquidation cases in which the debtor had already obtained a complete discharge of its debts before seeking to recover on undisclosed claims purely for its own benefit.[10]

---

[10] In re Coastal can be further distinguished based on the extensive evidence of intentional concealment. 179 F.3d at 213 ("[The debtor] avoided paying its debts by filing bankruptcy. Yet [a company], formed by [the debtor's] CEO, purchased [the debtor's] assets, including the undisclosed $10 million claim . . . for only $1.24 million . . . then obtained a net judgment of $3.6 million."); see also Kane, 535 F.3d at 387 (highlighting this distinction).

The court in Kane distinguished In re Superior Crewboats, 374 F.3d at 333, on facts much like these, where the Chapter 7 bankruptcy was reopened to pursue the Kanes' claim for the benefit of the estate's creditors. 535 F.3d at 387. In contrast to In re Superior Crewboats, where the estate had "reverted to the debtors as though the bankruptcy had never been filed" and the debtors stood to benefit directly from pursuing their claim, we stated:

> [T]he Kanes stand to benefit only in the event that there is a surplus after all debts and fees have been paid. As the bankruptcy court aptly observed in In re Miller, 'There is a statutorily explicit difference between cases in which property is not listed in the [b]ankruptcy [s]chedules but is disclosed and administered (as in the Superior Crewboats case . . . ) and the instant case in which property was not disclosed and was not administered.' Consequently, In re Superior Crewboats, Inc. does not require the application of the equitable doctrine of judicial estoppel in this case as a mater of law.

Id. (quoting In re Miller, 347 B.R. at 53). Jethroe is similarly distinguishable. 412 at 599 (5th Cir. 2005). There, the bankruptcy court had confirmed the debtor's Chapter 13 plan, but dismissed the bankruptcy proceeding before the plan was completed. Id. Therefore, it would have been impossible for the creditors in Jethroe to benefit from the claim because there was no longer a bankruptcy estate.

This case, though different in kind, is controlled by our decisions in Reed and Kane. Both concerned whether a Chapter 7 trustee is estopped from pursuing unscheduled claims on behalf of the estate where the debtor had wrongly concealed claims during the bankruptcy proceeding. Reed, 650 F.3d at 578; Kane, 535 F.3d at 387. We held in both cases that the claims originally brought by the debtors were unabandoned assets of the estate and that "the only way the creditors would be harmed is if judicial estoppel were applied to bar the trustee from pursuing the claim on behalf of the estate." Reed, 650 F.3d at 578;

see Kane, 535 F.3d at 388 (finding that judicial estoppel, as an equitable doctrine, should not be used if its application would "land another blow on the victims of bankruptcy fraud," that is, the creditors (quoting Biesek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir. 2006))).

It makes no difference under the circumstances of this case that Love is not a trustee as were the parties seeking to avoid estoppel in Reed and Kane. For our purposes, his role as essentially a debtor in possession puts him in an analogous position to a trustee.[11]  It follows that because the claim is the property of the estate, and the estate has not been administered, judicial estoppel should not apply to bar relief that would benefit creditors.  See Kane, 535 F.3d at 387.  The debtors in Kane were virtually indistinguishable from Love in his position as debtor.  While the Kanes' lawsuit was pending in state court, they filed a Chapter 7 bankruptcy.  535 F.3d at 383.  That bankruptcy resulted in a no-asset discharge.  Id.  It was not until a summary judgment motion was offered, arguing that judicial estoppel should apply, that the Kanes filed a motion to reopen the bankruptcy so the Trustee could administer the previously undisclosed lawsuit.  Id.  We reversed the district court's summary judgment application of judicial estoppel, holding that equity did not compel barring the trustee from acting on behalf of the estate.  Id. at 387-88.  Indeed, we even highlighted the possibility that the debtors may recover in the event of surplus. Id. at 387.

---

[11] "The debtor in possession performing the duties of the trustee is the representative of the estate and is saddled with the same fiduciary duty as a trustee to maximize the value of the estate available to pay creditors."  Cheng v. K & S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 455 (B.A.P. 9th Cir. 2004), aff'd, 160 F. App'x 644 (9th Cir. 2005) (unpublished). Though "debtor in possession" is a Chapter 11 term of art, "'the Chapter 13 debtor has been considered analogous to Chapter 11, which grants the debtor full authority as representative of the estate typical of a trustee.'" Rockett, 522 F.3d at 1082 n.2 (quoting Cable, 200 F.3d at 472).

It is true, as the majority opinion points out, that the claims in Reed and Kane were pursued by "innocent Chapter 7 trustees, and not by the debtors themselves." But Love's role as both debtor and protector does not make the analogy any less apt. The only real implication of the majority opinion's distinction is that the trustees in Reed and Kane were "innocent." This distinction is irrelevant, however, because the debtors in those cases were in the same position as Love, and the characterization of the trustee's role as "innocent" has nothing to do with the imposition of judicial estoppel where that trustee's duty, imposed post-disclosure, is to act on behalf of the estate.

Reed and Kane—where creditors stand to be harmed in the event judicial estoppel is imposed—bind us here. In contrast, the cases relied upon by the district court and the majority opinion—In re Coastal, Jethroe, and In re Superior Crewboats—do not involve application of judicial estoppel to the detriment of the estate's creditors, and should not have been the basis for the district court's application of judicial estoppel as an equitable remedy.[12]

The majority opinion further attempts to distinguish Reed because there the district judge expressly held that the debtor would not share in any recovery. Nothing, however, prevents the judge in this case from doing the same.[13] In the similar context of sanctions for abusive litigation conduct, also evaluated under

---

[12] Judicial estoppel is an "extraordinary remedy" to be invoked in order to stop a "miscarriage of justice"; it is not a "technical defense for litigants seeking to derail potentially meritorious claims." Ryan Operations, 81 F.3d at 356. The bankruptcy panel in In re Cheng highlighted that regardless of the application of the judicial estoppel factors to a particular litigant, judicial estoppel remains an equitable remedy and must be applied so as to avoid inequity. 308 B.R. at 458-49 ("This is a different matter that has generally been ignored in reported decisions."). "Thus, regardless of whether technical equitable rules and distinctions are controlling, the rich lore of equitable principles cannot be ignored." Id. at 459.

[13] The majority opinion's point that Love's plan was not amended to provide that his creditors would be paid out of any recovery is a red herring. There is nothing to prevent a court in equity from requiring Love to pursue plan modification, or simply precluding Love from any personal recovery on a potential judgment.

24

an "abuse of discretion" standard, we have cautioned courts not to use "death penalty" sanctions if less severe sanctions can be fashioned.  See, e.g, United States v. $49,000 Currency, 330 F.3d 371, 376 (5th Cir. 2003) ("[This] drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect."); Smith v. Smith, 145 F.3d 335, 344 (5th Cir. 1998).  Unlike the district court in Reed, the district court here did not attempt to tailor the sanctions to make sure "only the guilty are punished" or otherwise determine if less severe sanctions were appropriate.[14]

Finally, Reed highlighted the equitable nature of this analysis in light of the bankruptcy forum in which we find ourselves.  Therefore, we must

> apply judicial estoppel 'against the backdrop of the bankruptcy system and the ends it seeks to achieve.'  These ends are to 'bring about an equitable distribution of the bankrupt's estate among creditors holding just demands. . . .  Therefore, judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate.

Reed, 650 F.3d at 574 (citations omitted).

In this case there were (and are) other avenues for discouraging potentially deviant bankruptcy litigants.  We noted two of them in Reed: "revoking [or denying, as the case would be here] the debtors' discharges and

---

[14]  In footnote 4, the majority opinion posits that the district court could have concluded that such tailoring would be unhelpful here.   However, there is no indication here that the district court did any such analysis.  The majority opinion says that no such argument was made to the district court or here.  That is unsurprising since Reed was not decided until well after the briefing to the district court and this court. My point here is simply that the district court decided something that should be a matter of equity and nuance on summary judgment without a full consideration of equity or nuance.  In response, the majority opinion has imagined a line of thinking not engaged in by any of the other participants – the district court or the litigants.  Rather than having the appellate court substitute its own judgment for the district court, the proper approach would be to remand for consideration in the first instance by the district court of whether tailoring of some kind could be done here to achieve a more equitable result.

referring them . . . for criminal prosecution." Id. at 576 (quoting Biesek, 440 F.3d at 413). Perhaps more importantly, the resolution here has no deterrent effect. Judicial estoppel would not prevent a future litigant under like circumstances from defrauding the court because it penalizes the litigant's creditors—not the litigant.

To whatever extent Love may have intended to make illicit use of funds that belong to the estate, judicial estoppel is an inappropriate remedy where it will inhere to the detriment of Love's creditors. In Reed, we highlighted Judge Easterbrook's eloquent analysis of this problem:

> [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [tort] claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.

Reed, 650 F.3d at 576 (quoting Biesek, 440 F.3d at 413).

Exercising discretion in granting judicial estoppel must be done only when the remedy does not do "inequity in the name of equity." 27A AM. JUR. 2D EQUITY § 84 (2012); see also Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d 314, 319 (3d Cir. 2003) ("[A] district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." (citation and internal quotation marks omitted)). A judicial estoppel remedy here that allows Tyson to win based upon "bad conduct" in a case to which it was not even a party would merely transform an alleged windfall for Love into an inevitable windfall for the alleged wrongdoer Tyson—at the expense of Love's creditors.

III. Conclusion

Unlike the litigants in our prior decisions concerning judicial estoppel, Love gains no potential legal advantage from his failure to disclose the claim against Tyson to the bankruptcy court. As Love explained to the district court—albeit somewhat ineloquently—the recovery sought against Tyson would aid his creditors, not defraud them. In this vein, Tyson has not established Love's motive to conceal. Our precedent counsels against judicial estoppel in these circumstances.

Moreover, the court's equitable discretion must be used against the backdrop of the bankruptcy system and the goals it espouses. The outcome affirmed by the majority opinion does not further those goals—either in dissuading future deviant bankruptcy litigants or in protecting third party creditors' rights. At the very least, the remedy espoused in Reed could be utilized here in preventing unnecessary harm to creditors while preventing an allegedly deviant debtor from "playing fast and loose" with the courts.

None of the above represents some effort to "change the law." Rather it seeks to hold alleged tortfeasors who would reap an admitted windfall to their summary judgment burden of proof. Further, while judicial estoppel certainly should be available in some circumstances, it should not be mechanically applied. It is an equitable doctrine, demanding nuance, not absolutes.

The majority opinion discusses a very real concern, that debtors may defraud the bankruptcy system by failing to schedule their claims. Using judicial estoppel to curtail this potential problem, however, is not the answer under all circumstances. There are other legal avenues to punish, and obtain relief from, fraudulent debtors without imposing a windfall on an alleged tortfeasor to the detriment of innocent creditors.

Accordingly, I respectfully dissent.